John F. KNIGHT, Jr., et al., Plaintiffs and Plaintiffs–Intervenors,

United States of America, Plaintiff,

v.

The State of ALABAMA, et al., Defendants.

Civil Action No. CV–83–M–1676–S.

United States District Court, N.D. Alabama, Southern Division.

Dec. 12, 2006.

Sharon D. Simmons, Alice H. Martin, U.S. Attorney's Office, Birmingham, AL, Demetrius C. Newton, Birmingham, AL, Deval L. Patrick, U.S. Department of Justice, Civil Rights Division, Criminal Section, Washington, DC, Jeremiah Glassman, U.S. Department of Justice, Civil Rights Division, Educational Opportunities Section, Washington, DC, for Plaintiff.

James U. Blacksher, Susan J. Watterson, Birmingham, AL, Sarah L. Thompson, Sarah L. Thompson, Attorney at Law, Northport, AL, for Plaintiffs and Plaintiffs–Intervenors.

Gregory M. Biggs, State of Alabama Department of Corrections Legal Division, Montgomery, AL, David R. Boyd, Edgar R. Haden, Edward S. Allen, Robin G. Laurie, Balch & Bingham LLP, Edward M. George, Jeffery A. Foshee, Foshee & George LLC, Reginald L. Sorrells, Darnell D. Coley, Larry E. Craven, Alabama Department of Education, Solomon S. Seay, Jr., Solomon S. Seay Jr. PC, Kenneth L. Thomas, Thomas Means Gillis & Seay, PC, Ramadanah M. Salaam, Montgomery, AL, John B. Tally, Jr., Adams & Reese/Lange Simpson LLP, Braxton Schell, Jr., Braxton Schell Jr. PC, Carl E. Johnson, Jr., Whit Colvin, Bishop Colvin Johnson & Kent, Joe R. Whatley, Jr., Whatley Drake LLC, Robert D. Hunter, Altec Inc., Wil-

liam F Gardner, William K Thomas, Cabaniss Johnston Gardner Dumas & O'Neal, Edward A. Hosp, Maynard Cooper & Gale PC, Birmingham, AL, Robert M. Hill, Jr., Thomas M. Lovett, University of North Alabama, Florence, AL, Armand G. Derfner, Derfner Altman & Wilborn LLC, Charleston, SC, C. Glenn Powell, Norma M. Lemley, University of Alabama System, Tuscaloosa, AL, Fred D. Gray, Stanley F. Gray, Gray Langford Sapp McGowan Gray & Nathanson, Tuskegee, AL, Jean Walker Tucker, University of South Alabama, Mobile, AL, R.M. Woodrow, Doster & Woodrow, Anniston, AL, Richard F. Calhoun, Calhoun Faulk Watkins Clower & Cox, Troy, AL, Robert W. Rieder, University of Alabama System, Huntsville, AL, for Defendants.

## ORDER AND FINAL JUDGMENT

HAROLD L. MURPHY, District Judge.

This is a desegregation lawsuit involving all public universities in the State of Alabama and a plaintiff class consisting of all black citizens of the State of Alabama. The case is before the Court on several Joint Motions to Approve Settlement Agreements between the Knight–Sims Plaintiffs and the following Defendants: (1) Defendant University of West Alabama (Docket No. 3427); (2) the SBE Defendants (Docket No. 3452); (3) Defendant Troy University (Docket No. 3460); (4) Defendant University of South Alabama (Docket No. 3461); (5) Defendant Jacksonville State University (Docket No. 3462); (6) Defendant University of Montevallo (Docket No. 3463); (7) Defendant University of Alabama System and its member institutions ("UAS") (Docket No. 3465); (8) Defendant University of North Alabama (Docket No. 3466); (9) Defendant Auburn University (Docket No. 3467); and (10) the State Defendants (Docket No. 3469).

## I. Background

### A. Summary of the *Knight–Sims* Litigation

On January 15, 1981, John F. Knight, Jr. and a class of other alumni, students, and faculty members of Defendant Alabama State University ("Defendant ASU") filed this lawsuit in the United States District Court for the Middle District of Alabama, attacking vestiges of discrimination in the State of Alabama's public higher education system. *Knight v. Alabama,* 787 F.Supp. 1030, 1048 (N.D.Ala.1991) (*"Knight I"*). Since then, the litigation has followed a complicated and convoluted path in which Alease Sims and others became class members in 1983, and the following entities were added as parties: the United States; the Governor of Alabama; the Alabama State Board of Education; and all four-year Alabama public universities and colleges. *Id.* at 1048–50.

The Court held two bench trials in the *Knight* case, one lasting six months and another lasting six weeks. *Knight I,* 787 F.Supp. at 1051; *Knight v. Alabama,* 900 F.Supp. 272, 280 (N.D.Ala.1995) (*"Knight II"*). Both trials resulted in findings that vestiges of segregation remained within the Alabama system of public higher education, and that these vestiges violated Title VI of the Civil Rights Act of 1964 as well as the United States Constitution. *Knight I,* 787 F.Supp. at 1368; *Knight II,* 900 F.Supp. at 280–81.

As a result of the Court's findings in those bench trials, the Court fashioned and approved a number of remedies, too voluminous to recount here. The remedies are set forth in the Court's 1991 and 1995 Remedial Decrees and the Court's accompanying Orders implementing those Remedial Decrees. Those remedies are calculated to eliminate the vestiges of historical

discrimination within the Alabama system of public higher education.

The Court has also retained active jurisdiction over the case to the present time, and is highly familiar with the facts of this litigation, counsel for the parties, and the parties themselves. Counsel for the parties provide regular reports to the Court, including voluminous Annual Reports. The most recent Annual Report, the 2005 Annual Report, details, among other things, the racial composition of the students enrolled at the State of Alabama's various institutions of higher education. The Court incorporates the portions of the 2005 Annual Report setting forth statistical data into this Order as if fully stated herein.

Shortly after issuing the 1991 Remedial Decree, the Court appointed a Special Master. Several years later, the Court also appointed an Oversight Committee consisting of highly qualified, nationally known academics and educational leaders to oversee on a daily basis the administration of the Court-ordered remedies in this litigation. In particular, the Oversight Committee and the Special Master have assisted the Court and the parties in implementing the requirements of the Court's Decrees, and have supervised the implementation of those Decrees. The Oversight Committee and the Special Master provide regular reports to the Court concerning their activities.

The Court itself also conducts periodic reviews of the effectiveness of the Court-ordered remedies. The Court's own experience in managing this litigation and in overseeing compliance with the Court's Decree, as well as the reports received from the Oversight Committee, the Special Master, and the parties, keep the Court well aware of the ongoing developments in this case.

## B. The Various Motions

### 1. Background

The 1995 Remedial Decree provided that it would expire ten years after the date of its entry, or on July 31, 2005. *Knight*, 900 F.Supp. at 374. On July 29, 2005, Defendant ASU filed a Notice of Objections to the Termination of Provisions of the Remedial Decree. (Docket No. 3353.)

On July 29, 2005, the Court entered an Order extending the time for filing objections to the termination of the 1995 Remedial Decree until September 29, 2005. (Order of July 29, 2005.) On August 5, 2005, Defendant ASU filed a Motion to Withdraw the Notice of Objections that it filed on July 29, 2005. (Docket No. 3355.) On August 18, 2005, the Court granted that Motion, and denied the objections contained in that notice without prejudice. (Order of Aug. 18, 2005.)

The parties engaged in settlement discussions with respect to the issues concerning termination of the Remedial Decrees under the able guidance of the Special Master. On September 7, 2005, the Court entered an Order allowing the parties to continue their settlement discussions through October 31, 2005. (Order of Sept. 7, 2005.)

Although the initial settlement discussions were fruitful and helpful to the parties and the Court, the parties were unable to reach an agreement to resolve all of the issues with respect to the termination of the Remedial Decrees and the conclusion of this litigation by October 31, 2005. On October 31, 2005, the Court entered an Order directing the parties to file any objections to the termination of the Remedial Decrees by November 30, 2005, and directing the parties to file any responses to the objections by January 6, 2006. (Order of Oct. 31, 2005.)

On November 30, 2005, Defendant Alabama A & M University ("Defendant AAMU") filed an Opposition to Termination of Remedial Decree. (Docket No. 3372.) On November 30, 2005, the United States filed an Opposition to Termination of Remedial Decree. (Docket No. 3374.) On November 30, 2005, the Knight Plaintiffs filed a Motion to Alter Judgment to Extend Term of Remedial Decree. (Docket No. 3375.) Finally, on November 30, 2005, Defendant ASU filed a Notice of Objections to the Termination of Provisions of the Remedial Decree. (Docket No. 3377.)

The Court allowed the parties to conduct discovery with respect to their objections to the termination of the Remedial Decrees, (Order of March 6, 2006), and many of the parties filed briefs concerning their respective positions. After the conclusion of the discovery period established by the Court's March 6, 2006, Order, the Court entered an Order directing counsel to appear before the Court for a pretrial conference on September 27, 2006, and to appear before the Court on October 2, 2006, for a hearing concerning the issues surrounding termination of the Remedial Decrees. (Order of July 7, 2006.) On July 21, 2006, the Court entered a second Order resetting the hearing on the issues surrounding termination of the Remedial Decrees for October 10, 2006, through October 13, 2006. (Order of July 21, 2006.)

The parties continued to engage in settlement discussions with the supervision and assistance of the Special Master. By September 26, 2006, the parties already had begun filing Motions for Approval of Settlement Agreements. (Docket Nos. 3452–53.)

At the September 27, 2006, pretrial conference, counsel for the respective parties outlined the issues that remained for the October 10, 2006, hearing. Counsel indicated that they had resolved several of the issues, and that they intended to work toward resolving the remaining issues.

The State of Alabama and the Knight Plaintiffs ultimately reached an agreement in principle to resolve the remaining issues in this case. By September 29, 2006, the Court entered an Order granting a Motion to Approve Consent Judgment for Sequestration of State Funds, and indicated that the Court expected the State and the Knight Plaintiffs to negotiate the language of a proposed Settlement Agreement by October 10, 2006. (Order of Sept. 29, 2006.)

On October 4, 2006, the parties began filing various Motions to Approve Settlement Agreements between the Knight Plaintiffs and certain Defendants. (Docket Nos. 3460–63.) In recognition of the parties' efforts to resolve the remaining issues in this litigation, the Court entered an Order on October 6, 2006, continuing the hearing scheduled for October 10, 2006, until further order. (Order of Oct. 6, 2006.)

On October 10, 2006, the parties filed Motions to Approve Settlement Agreements between the Knight Plaintiffs and certain Defendants. (Docket Nos. 3466–67, 3469.) On October 19, 2006, the Knight Plaintiffs filed a Motion for Hearing Regarding Fairness of Settlements. (Docket No. 3470.)

On December 1, 2006, Defendant AAMU withdrew its Objections to Termination of the Remedial Decree, except for its objections as to capital funding and its position on capital funding as contained in its Objection to the Settlement Agreement between the Knight–Sims Plaintiffs and the State Defendants. (Docket No. 3502.) The Court addresses Defendant AAMU's objections pertaining to capital funding in

connection with the Court's analysis of the proposed Settlement Agreements.

On December 1, 2006, Defendant ASU filed a Notice of Withdrawal of certain of its objections. (Docket No. 3503.) Specifically, Defendant ASU withdrew its objections concerning: (1) funding for Title VI programs; (2) the Ph.D. program in microbiology; (3) diversity scholarships, insofar as those objections relate to the continuation of diversity scholarship funding for students presently attending Defendant ASU on a diversity scholarship; (4) course and program duplication by proximate institutions; and (5) restrictions on the expansion of two year and technical colleges in the Montgomery, Alabama, area. Defendant ASU, however, stated that it intended to "maintain [its] objections to the termination of the remedial decree as it relates to the calculation of the reimbursement for the graduate diversity scholarships". (Id.) The Court addressed those objections in a separate Order, and those objections have been resolved.

The United States also has not formally withdrawn its objections to the termination of the Court's Remedial Decrees. During the December 5, 2006, hearing, however, counsel for the United States stated that the settlement agreements between the various parties have the effect of resolving the objections filed by the United States. (Dec. 5, 2006, Hr'g Tr.)

### 2. Preliminary Approval and Notice

On October 27, 2006, the Court entered an Order granting preliminary conditional approval to the following proposed Settlement Agreements: (1) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and Defendant University of West Alabama ("UWA"); (2) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and Defendants Alabama State Board of Education, Chan-

cellor Thomas E. Cort, Athens State University, and Calhoun State Community College (collectively, the "SBE Defendants"); (3) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and Defendant Troy University ("Troy"); (4) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and Defendant University of South Alabama ("South Alabama"); (5) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and Defendant Jacksonville State University ("Jacksonville State"); (6) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and Defendant University of Montevallo ("Montevallo"); (7) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and UAS; (8) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and Defendant University of North Alabama ("UNA"); (9) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and Defendant Auburn University and Defendant Auburn University Montgomery; and (10) the proposed Settlement Agreement between the Knight–Sims Plaintiffs and the State of Alabama, the Governor of Alabama, the State Finance Director, the Alabama Commission on Higher Education ("ACHE") and its members, and the Alabama Public School and College Authority and its members (collectively, the "State Defendants"). (Order of Oct. 27, 2006.) In that Order, the Court preliminarily found that the terms of the above proposed Settlement Agreements were fair, reasonable, and consistent with the requirements of the Constitution and laws of the United States. (Id. at 3.) The Court also preliminarily found that the above-listed Defendants had satisfied their constitutional and statutory burdens of eliminating, to the extent practicable and consistent with sound educational practice, the vestiges of de jure segregation remaining

in their institutional conditions, policies, and practices, and, by entering into their respective settlement agreements, had continued to demonstrate their commitment to continuing to operate in a constitutional and non-discriminatory fashion, under *United States v. Fordice*, 505 U.S. 717, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992). (*Id.* at 3.) The Court ordered the parties to file any objections to the terms of the proposed Settlement Agreements within ten days of the date of the October 27, 2006, Order. (*Id.* at 4.)

The Court ordered the parties to provide notice of the proposed settlement agreements to members of the plaintiff class in the form and by the means set out in the Notice to Class attached to the October 27, 2006, Order. (Order of Oct. 27, 2006, at 4.) The Notice to Class provided that all written objections must be submitted to the Clerk no later than November 27, 2006. The Court further stated that all objections by class members must be timely submitted in writing to be considered by the Court. (*Id.*)

The Court scheduled a hearing to determine the fairness of the proposed Settlement Agreements for 10:00 a.m. CST on December 5, 2006, in the Hugo L. Black U.S. Courthouse in Birmingham, Alabama. (Order of Oct. 27, 2006, at 4.) The Notice to Class stated that the Court would consider all timely-submitted written comments, and that it was not necessary for individuals who filed comments to appear at the hearing. (*Id.*)

### 3. Objections

#### a. Objections by Defendant Alabama A & M University

On November 1, 2006, Defendant AAMU filed an objection to the proposed Settlement Agreement between the Knight–Sims Plaintiffs and the State Defendants. (Docket Entry No. 3480.) Spe-cifically, Defendant AAMU objected to Section VI of the proposed Settlement Agreement, which pertained to capital funds for Defendant AAMU and required that the $7.3 million of new capital funds to be provided to Defendant AAMU will be spent on facilities that are directly related to instruction activities or research related to Defendant AAMU's historic mission. Defendant AAMU argued that the Court's 1991 Decree did not place such a restriction on Defendant AAMU, and noted that it did not object to Court approval of such expenditures. Defendant AAMU asked that the Court delete the sentence requiring that Defendant AAMU spend capital funds provided under Section XI of the Agreement on facilities directly related to instruction activities and research. The State Defendants responded to that objection, and Defendant AAMU filed a reply in support of its objection.

#### b. Conditional Objection by the State of Alabama

The State of Alabama filed a conditional objection to the proposed Settlement Agreements between the Knight–Sims Plaintiffs and other entities, and requested that the Court include in its Order approving the proposed Settlement Agreement the following provision:

> While the parties to these agreements are free to petition the Legislature for funding to cover the requirements of these agreements, in approving these agreements it is not the intent of the Court to require any funding by the State beyond that required in the settlement agreement between the State and the Knight Plaintiffs, nor is it the intent of the Court to require ACHE to do anything beyond those things it has agreed to do in that agreement. Any failure of the State to provide funds for things required in settlement agree-

ments to which it is not a party will not constitute a breach of any of the approved agreements or a violation of this Order.

(Docket Entry No. 3485 at 4–5.)

### c. Objections by Members of the Plaintiff Class

Six members of the Plaintiff class filed written objections to approval of the proposed Settlement Agreements with the Clerk, and five of those written objections to approval of the proposed Settlement Agreements were filed with the Clerk by November 27, 2006, as required by the Court's October 27, 2006, Order. (Docket Nos. 3496–3501.) The Court summarizes those objections in turn.

### i. Timely–Filed Objections

On November 20, 2006, the Clerk received a written objection to approval of the proposed Settlement Agreements by Willie Strain and Dr. George Munchus. (Docket No. 3496.) In their written objection, Mr. Strain and Dr. Munchus complain that Defendants have not complied with the Remedial Decree, and assert that the State and the Historically White Institutions ("HWIs") have not met their burden of demonstrating that termination of the Remedial Decrees is appropriate. Instead, Mr. Strain and Dr. Munchus contend that the State and the HWIs continue to maintain a system that is characteristic of, and significantly influenced by, *de jure* segregation. Mr. Strain and Dr. Munchus further complain that the strategic diversity plans required by most of the proposed Settlement Agreements will prove ineffective, that a five-year duration of the proposed Settlement Agreements simply is not long enough, and that disputes concerning the proposed Settlement Agreements should not be submitted to mediation.

On November 21, 2006, the Clerk received a written objection concerning the proposed Settlement Agreements from Dr. Angela K. Lewis. (Docket No. 3497.) In her written objection, Dr. Lewis primarily raises complaints concerning faculty issues at Defendant UAB, objects to various provisions in the proposed Settlement Agreements and suggests alternatives, and opposes entry of a dismissal and final judgment in this case.

On November 22, 2006, the Clerk received a written objection from State Representative Joseph C. Mitchell, Ph.D., apparently acting in his individual capacity. (Docket No. 3498.) Representative Mitchell's objections primarily concern issues involving faculty and administration, rather than students. Representative Mitchell focuses his complaints upon Defendant South Alabama, and complains, in large part, of Defendant South Alabama's use of outsourcing.

On November 22, 2006, the Clerk received another set of written objections filed by Representative Mitchell, this time in his capacity as the Chairperson of the Alabama House of Representatives Sub Committee on Colleges and Universities. (Docket No. 3499.) In those objections, Representative Mitchell primarily raises complaints concerning the proposed Settlement Agreements insofar as those proposed Settlement Agreements relate to faculty and administration issues. In particular, Representative Mitchell targets Defendant South Alabama.

Finally, on November 27, 2006, the Clerk received written objections from the Auburn Black Caucus. (Docket No. 3500.) Those objections primarily address concerns involving faculty and administration, contend that the Strategic Diversity Plan for Auburn University does not include all of the eighteen goals submitted by the Auburn Black Caucus, and complain that

the proposed Settlement Agreements do not include language specifically referencing the Alabama Cooperative Extension System's plan for continued desegregation of faculty and other employees.

### ii. Objections Not Timely Filed

Dr. Olethia Davis, a professor at Defendant Troy, e-mailed a copy of her objections to the Settlement Agreements to the Clerk. The Clerk brought that e-mail communication to the Court's attention, and the Court has reviewed the communication. On November 28, 2006, after the deadline for filing written objections expired, Dr. Davis filed a copy of her written objections. The communications from Dr. Davis, in essence, involve individual claims of employment discrimination by Dr. Davis.

### 4. The December 5, 2006, Hearing

On December 5, 2006, the Court held a final fairness hearing with respect to the proposed Settlement Agreements. During the December 5, 2006, final fairness hearing, the Court heard from counsel for the parties and the parties' representatives.

Specifically, during the December 5, 2006, final fairness hearing, Attorney Rob Hunter, counsel for the State of Alabama, stated that the notice of the proposed settlement agreements had been published as directed by the Court. (Dec. 5, 2006, Hr'g Tr.) Attorney Hunter introduced into evidence a Notice of Compliance with that Order, indicating that the Notice was published in the legal notice sections of *The Birmingham News*, *The Montgomery Advertiser*, the *Mobile Register*, the *Huntsville Times*, the *Tuscaloosa News*, the *Anniston Star*, the *Dothan Eagle*, the *Birmingham Times*, and the *Mobile Beacon*, as directed by the Court. (*Id.*) Attorney Hunter represented that the newspapers were of considerable and general

circulation in their respective areas and in the areas specified by the Court, and that the newspapers reached a large portion of the population of the State of Alabama. (*Id.*)

Attorney Jim Blacksher, lead counsel for the Knight–Sims Plaintiffs, verified that the notice appeared on the websites of all of the Defendant universities, and that a copy of the notice had been posted in the main library of each campus of the Defendant universities. (Dec. 5, 2006, Hr'g Tr.) Attorney Blacksher stated that in his opinion, the requirements of the Court's Order directing notice had been fulfilled. (*Id.*)

Alease Sims, one of the class representatives for the Knight–Sims Plaintiffs, also made a statement to the Court. (Dec. 5, 2006, Hr'g Tr.) Ms. Sims stated that she has been involved in this litigation for over thirty years, and described some of the history of the litigation. (*Id.*) Although Ms. Sims does not agree that all of the vestiges of segregation have been removed, she is pleased with the progress being made in this litigation and supports the proposed settlements. (*Id.*)

John Knight, another class representative for the Knight–Sims Plaintiffs, also gave a statement during the December 5, 2006, hearing. (Dec. 5, 2006, Hr'g Tr.) Mr. Knight described the history of this litigation and the accomplishments of the litigation. (*Id.*) In particular, Mr. Knight observed that to date, all relief awarded in the case had to be ordered by the Court, as a number of previous attempts to settle the litigation had proven unsuccessful. (*Id.*) Although Mr. Knight did not agree that the vestiges of segregation had been completely eliminated, he agreed that the State and the Defendant universities had complied with the terms of the Remedial Decrees and supported the proposed Settlement Agreements. (*Id.*) Mr. Knight observed that it is time for the struggle to

shift from the legal system to the political arena, and opined that the provisions of the proposed Settlement Agreements will assist in that process. (*Id.*) Mr. Knight also detailed the many accomplishments achieved through this litigation. (*Id.*) Finally, Mr. Knight expressed his utmost respect for Attorney Blacksher and the legal team representing the Knight–Sims Plaintiffs, who had worked tirelessly in this litigation—even without pay at some points—to represent the class's interests. (*Id.*)

Attorney Blacksher described the objections filed by the class members. (Dec. 5, 2006, Hr'g Tr.) Attorney Blacksher observed that the class members had filed a total of six objections, raising three main points: (1) contentions that vestiges of discrimination had not been eliminated within the Alabama system of higher education; (2) requests for the mandates of the Settlement Agreements to be made legally enforceable; and (3) requests that the Court continue jurisdiction over its Remedial Decrees for an additional five to fifteen years. (*Id.*) Although Attorney Blacksher agreed that the vestiges of segregation had not been fully eliminated, he observed that the vestiges had been eliminated to the extent practicable and feasible by means of legal relief. (*Id.*) Attorney Blacksher observed that the named Plaintiffs support the proposed Settlement Agreements and agree that pursuing relief through political processes, rather than through the legal system, is the best way to make progress toward eliminating any vestiges of segregation that remain. (*Id.*) Attorney Blacksher therefore urged the Court to overrule the objections filed by the class members. (*Id.*)

Attorney Braxton Schell, lead counsel for Defendant AAMU, also spoke at the December 5, 2006, hearing. (Dec. 5, 2006, Hr'g Tr.) Attorney Schell informed the Court that Defendant AAMU's lone remaining objection pertained to the restriction on Defendant AAMU's use of capital funds as provided in the proposed Settlement Agreement between the Knight Plaintiffs and the State Defendants. (*Id.*) Attorney Schell urged the Court to lift that restriction and to allow Defendant AAMU to use up to one-third of the capital funds provided to it under that proposed Settlement Agreement for needed renovations to existing dormitories. (*Id.*)

Attorney Armand Derfner and Attorney Solomon Seay spoke on behalf of Defendant ASU at the December 5, 2006, hearing. (Dec. 5, 2006, Hr'g Tr.) Attorney Derfner stated that the parties had made substantial progress in the case, but observed that much work remained to be done. (*Id.*) Attorney Derfner advised the Court that all of the objections Defendant ASU filed, with the exception of its objection pertaining to the diversity scholarships and the use of those scholarships for graduate students, had been withdrawn. (*Id.*)

Attorney Seay described Defendant ASU's request that the Court modify its restriction on the percentage of diversity scholarship funds that Defendant ASU could use for graduate students. (Dec. 5, 2006, Hr'g Tr.) Attorney Seay urged the Court to lift that restriction and allow Defendant ASU to award up to $350,000 in graduate diversity scholarships annually, without regard to the number of diversity scholarships issued. (*Id.*)

At the close of the December 5, 2006, final fairness hearing, the Court orally approved the proposed Settlement Agreements and adopted the terms of those agreements as the Order of the Court. (Dec. 5, 2006, Hr'g Tr.) Specifically, the Court found that the notice to class was given in accordance with the Court's Order, and that the notice given was ade-

quate, thorough, and met the requirements of due process. (*Id.*) The Court agreed that all of the vestiges of segregation had not been removed, but found that the vestiges had been removed to the extent practicable and consistent with sound educational practices. (*Id.*)

The Court stated that it had reviewed all of the proposed Settlement Agreements for fairness and thoroughness, and found, without equivocation, that the proposed Settlement Agreements were arrived at without fraud or collusion, resulted from arms'-length negotiations, and were in the best interests of the parties and the class. (Dec. 5, 2006, Hr'g Tr.) The Court further concluded that the class representatives adequately represented the class, and observed that class counsel had proven themselves able, outstanding, and thorough lawyers who had proceeded in the best interests of their clients throughout the litigation. (*Id.*) The Court further observed that the objections filed by the class members were minimal in number as compared to the total number of class members, but stated that it would give serious consideration to those objections. (*Id.*)

The Court found that the proposed Settlement Agreements met the requirements of *Fordice,* and were in the best interests of the class and the parties. (Dec. 5, 2006, Hr'g Tr.) The Court observed that the proposed Settlement Agreements provided for self-enforcement by the parties for a term of five years, and noted that it was confident that the parties would comply with the proposed Settlement Agreements and the self-enforcement provisions, and that the parties would do so in good faith. (*Id.*) The Court further commended the attorneys and the parties, including Defendants and their counsel and officials of the State of Alabama, for their responsible conduct during this litigation. (*Id.*)

At the conclusion of the December 5, 2006, hearing, the Court informed the parties that it would enter a written Order to memorialize the Court's oral Order and to perfect the record. (Dec. 5, 2006, Hr'g Tr.) This Order accomplishes that purpose.

## II. Discussion

### A. Terms of the Proposed Settlement Agreements

The proposed Settlement Agreements provide for settlement of the Knight–Sims Plaintiffs' claims for injunctive relief. With the exception of the proposed Settlement Agreement between the Knight Plaintiffs and the State Defendants, the proposed Settlement Agreements between the Knight Plaintiffs and the various Defendants contain very similar provisions. Specifically, the proposed Settlement Agreements between the Knight Plaintiffs and the Defendants, other than the State Defendants, include: (1) requirements that various institutions develop Strategic Diversity Plans and prepare Strategic Diversity Reports; (2) provisions stating that the proposed Settlement Agreements will last for terms of five years each, to run from various dates; and (3) requests for the Court to grant final approval of the proposed Settlement Agreements and to enter judgment dismissing all claims in this action except for certain claims presently pending on appeal. The Court discusses specific terms of certain proposed Settlement Agreements below.

The provisions of the proposed Settlement Agreement between the Knight Plaintiffs and the SBE Defendants also provide for an increase in need-based financial assistance to Athens State University and Calhoun State Community College students for two years following the approval of the proposed Settlement Agreement and for payment of $25,000 of

attorneys' fees to counsel for the Knight Plaintiffs. (Docket Entry 3452.) In turn, the proposed Settlement Agreement between the Knight Plaintiffs and Defendant Troy provides for Defendant Troy to engage in strategic diversity initiatives that its administration deems appropriate to recruit, hire, and retain African–American faculty and professional level administrators, and to take certain other actions with respect to recruitment and hiring of African–American faculty and professional level administrators. (Docket Entry 3460.) Similarly, the proposed Settlement Agreement between the Knight Plaintiffs and Defendant UAS provides for Defendant UAS's member institutions to engage in strategic diversity initiatives that their administrations deem appropriate to recruit, hire, and retain African–American faculty and professional level administrators, and to take certain other actions with respect to recruitment and hiring of African–American faculty and professional level administrators. (Docket Entry 3465.)

The proposed Settlement Agreement between the Knight Plaintiffs and the State Defendants contains provisions concerning need-based financial aid and requires the State Defendants to take certain actions or to recommend certain actions to the Legislature. (Docket Entry 3469.) The proposed Settlement Agreement between the Knight Plaintiffs and the State Defendants also requires ACHE to post certain information on its website, and contains provisions pertaining to the Diversity Scholarships, the Trust for Educational Excellence, the programs established by the Remedial Decree, and capital funding at Defendant ASU and Defendant AAMU. (*Id.*) The proposed Settlement Agreement further provides that the State Finance Director has agreed to pay Plaintiffs attorneys' fees of $1,000,000.00 from the funds sequestered by the September 29, 2006, Order, and $1,500,000 into the registry of this Court as additional litigation expenses. (*Id.*)

### B. Assessment of the Proposed Settlement Agreements: Procedural Aspects

### 1. Terms of the Proposed Settlement Agreements and Notice

 Approval of a class action settlement is within the Court's discretion; however, the Court cannot confer approval of a proposed settlement without first scrutinizing the terms of the proposed settlement agreement. *In re Domestic Air Transp. Litig.*, 148 F.R.D. 297, 312 (N.D.Ga.1993). "In order to protect the interests of absent class members, the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished." 2 Herbert B. Newburg & Alba Conte, *Newburg on Class Actions* § 11.40 (3d ed.1992).

 When a class action raises a constitutional claim that is premised upon complex factual issues, the district court "has at the very least the discretion, if not indeed the duty" to hold an evidentiary hearing to assess the terms of the proposed settlement agreement. *Stovall v. City of Cocoa*, 117 F.3d 1238; 1242 (11th Cir.1997).

 The Court also must "provide notice of a proposed settlement to the class and extend to any objectors an opportunity to voice their objections before the settlement is approved." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1219 (5th

Cir.1978) (citing Fed.R.Civ.P. 23(e)).[1] The Court however, need not necessarily allow class members the opportunity to appear personally at a hearing concerning whether to approve a proposed settlement agreement. *Van Horn v. Trickey,* 840 F.2d 604, 606 (8th Cir.1988).

As discussed above, the Court is familiar with the terms of the proposed Settlement Agreements. The Court finds that the proposed Settlement Agreements are designed to serve the purposes of the Court's 1991 and 1995 Remedial Decrees, as well as the ultimate goal of this litigation: to eliminate to the extent practicable vestiges of *de jure* segregation that existed in the Alabama system of higher education prior to the initiation of this lawsuit and when the Court entered its Remedial Decrees.

In this action, the Court required the parties to disseminate a Notice of the proposed Knight–Sims Settlement Agreements in a manner reasonably intended to reach all the members of the Plaintiff class by the most effective means possible. Specifically, the Court required the parties to publish the Notice to the Plaintiff class "once a week for two weeks prior to the deadline established by the Court for the Clerk's receipt of written comments in the legal notice section of *The Birmingham News, The Montgomery Advertiser,* the *Mobile Register,* the *Huntsville Times,* the *Tuscaloosa News,* the *Anniston Star,* the *Dothan Eagle,* the *Birmingham Times,* and the *Mobile Beacon,* with an advertisement referencing the legal notice." (Order of Oct. 27, 2006, at 8.)

█ During the December 5, 2006, hearing, counsel presented affidavits of publication demonstrating that notice of the proposed Knight–Sims Settlement

Agreements was provided to the members of the Plaintiff class in the manner and by the means specified by the Court's October 27, 2006, Order. In particular, the notice was published in the legal notice sections of the newspapers designated by the Order, was posted on the websites of the Defendant universities, and was posted in the main libraries on each of the campuses of the Defendant universities. Further, members of the Plaintiff class filed objections to the proposed Settlement Agreements in the manner directed by the Court's October 27, 2006, Order, indicating that the notice indeed reached members of the Plaintiff class. The Court therefore finds that the notice provided to the members of the Plaintiff class satisfies the requirements of Federal Rule of Civil Procedure 23(e) and the Due Process Clause of the Fourteenth Amendment.

Further, the Court invited the Plaintiff class members to submit written objections to the proposed Settlement Agreements, and the Court considered those objections during the December 5, 2006, fairness hearing. The Court consequently finds that the procedure followed in this case satisfies the procedural requirements set forth in *Stovall.*

█ Because the Court certified the Plaintiff class pursuant to Federal Rule of Civil Procedure 23(b)(2), class members do not possess a right to opt out of the class even if they object to the terms of the proposed agreement. *Holmes v. Cont'l Can Co.,* 706 F.2d 1144, 1153 (11th Cir. 1983) ("The general rule in this circuit remains that absent class member of [Rule 23(b)(2)] classes have no automatic right to opt out of the lawsuit and to prosecute

---

**1.** Opinions of the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the Eleventh Circuit, are binding precedent on this Court. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc).

an entirely separate action.").[2] In entering this Order, the Court is mindful of the fact that the Plaintiff class members in this case do not possess the right to opt out of the class.

### 2. Adequate Representation by Class Representatives and Counsel

▮ The Court further finds that the Plaintiff class representatives, Mr. John Knight and Ms. Alease Sims, zealously pursued this case on behalf of the Plaintiff class. Mr. Knight and Ms. Sims attended both the 1991 and 1995 bench trials in this case, and worked tirelessly with class counsel and counsel for Defendants, the Special Master, and the Oversight Committee to implement the 1995 Remedial Decree and to ensure compliance with that Decree. The Court consequently finds that the Plaintiff class representatives adequately represented the class.

Additionally, the Plaintiff class was represented by highly able counsel who have significant experience representing parties in class action cases and in cases involving desegregation law. Counsel for the Plaintiff class worked zealously, diligently, and tirelessly to achieve the most effective remedies practicable for the Plaintiff class, to implement Court's Remedial Decrees, and to ensure compliance with those Decrees. Counsel for the Plaintiff class fought long and vigorously for the rights of the members of that class, often without pay for their efforts. Under those circumstances, the Court finds that the Plaintiff class members were adequately represented by their counsel.

### C. Assessment of the Proposed Settlement Agreement: Factual Findings and Legal Conclusions

▮ In determining whether to approve a proposed settlement agreement, a court must "undertake an analysis of the facts and the law relevant to the proposed compromise." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977). A court must answer two questions when examining a proposed settlement agreement: (1) whether the settlement is the result of fraud or collusion; and (2) whether the proposed settlement is fair, adequate, and reasonable. *Id.* ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."). The Court analyzes those questions below.

### 1. Fraud or Collusion

▮ The Court first examines whether the proposed Settlement Agreements are the result of fraud or collusion. This exercise requires the Court to determine whether the settlements are achieved in good faith after arms'-length negotiations. *Domestic Air,* 148 F.R.D. at 313–14; *see also Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984); *Dillard v. Crenshaw County,* 748 F.Supp. 819, 823 (M.D.Ala.1990).

▮ It is absolutely clear to the Court that no fraud or collusion occurred in this case. The Court has observed this litigation for many months, and has first-hand knowledge of the vigor with which counsel for Plaintiffs and counsel for Defendants pursued their respective cases. Through-

---

**2.** Two limited exceptions to this rule arise when: (1) the parties to the proposed settlement agreement themselves provide for such an opt-out provision; and (2) the relief to be awarded to the class contains a significant amount of money damages. *Holmes,* 706 F.2d at 1154–55. Neither of those exceptions applies to this case, and the class members thus do not possess the right to opt out of the class.

out the entire course of this litigation, all counsel in the case held their clients' best interests as their highest priority. Further, through the tireless efforts of the Special Master and the Special Master's frequent reports to the Court, the Court is well aware that the proposed Settlement Agreements resulted from hard-fought negotiations that lasted many, many months. Indeed, as Mr. Knight stated during the December 5, 2006, hearing, the parties attempted to settle this litigation on many occasions but were unable to do so. (Dec. 5, 2006, Hr'g Tr.) The Court consequently concludes that the proposed Settlement Agreements are not the result of fraud or collusion.

### 2. Fairness, Adequacy, and Reasonableness

 The Court next determines whether the proposed settlement agreements are fair, adequate, and reasonable. "In determining the fairness, adequacy, and reasonableness of the proposed compromise, the inquiry should focus upon the terms of the settlement." *Cotton,* 559 F.2d at 1330. The Court should compare the terms of the settlement agreement with the likely rewards that the "class would have received following a successful trial of the case." *Id.* "The relief sought in the complaint may be helpful to establish a benchmark by which to compare the settlement terms." *Id.* When evaluating a proposed settlement agreement, the court "ought not try the case in the settlement hearings," and the court also must keep in mind that "compromise is the essence of a settlement." *Id.*

 The burden of establishing the fairness, adequacy, and reasonableness of the proposed Settlement Agreements rests on the settlement proponents. *Domestic Air,* 148 F.R.D. at 312. When assessing whether the settlement propo-

nents have discharged this burden, the Court takes into account not only the presentations of counsel, but also other sources, "including the comments of class representatives and class members, the judge's own knowledge of the case obtained during pretrial proceedings, and information provided by persons who in unusual cases may be appointed by the court as special masters to assess the settlement." *Id.* (quoting Manual for Complex Litigation (Second) § 30.41 (1985)). The Court, however, should be hesitant to substitute its own judgment for that of counsel. *Id.* at 313 (quoting *Cotton,* 559 F.2d at 1330).

 Courts in this Circuit generally consider nine factors when evaluating the fairness, reasonableness, and adequacy of a settlement: (a) the likelihood of success at trial; (b) the stage of the proceedings at which the settlement was achieved; (c) the range of possible recovery; (d) the point on or below the range of possible recovery at which the settlement is fair, adequate, and reasonable; (e) the complexity, expense, and duration of the litigation; (f) the substance and amount of opposition to the settlement; (g) provisions in the settlement agreement for payment of class counsel's fees; (h) whether the named plaintiffs are the only class members to receive monetary relief, or are to receive relief that is disproportionately large; and (i) whether particular segments of the class are treated significantly differently from others. *Domestic Air,* 148 F.R.D. at 313–14; Manual for Complex Litigation (Third) § 30.42, at 239 (1995). The Court considers those factors in turn, and then considers whether the proposed Settlement Agreements satisfy the constitutional requirements of *Fordice.*

### a. Likelihood of Success at Trial

 The likelihood of success at trial is by far the most important factor when

evaluating a settlement. *Domestic Air,* 148 F.R.D. at 313. However, the Court should not reach any ultimate conclusions with respect to issues of fact or law involved in the case. "The very uncertainty of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise.... [Settlements] could hardly be achieved if the test on hearing for approval mean establishing success or failure to a certainty." *Id.* at 315 (quoting *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir.1981)). In *Domestic Air,* the court examined three factors when making this determination: (1) the merits of the class members' claims; (2) the defenses raised by the defendants; and (3) the manageability of the trial. *Id.* at 316–17.

Thanks to the two bench trials and numerous hearings conducted by the Court and regular communications and reports received from counsel, from the Oversight Committee, and from the Special Master, the Court is highly familiar with the facts and law involved in this case. Given its familiarity, the Court believes that good cause exists for the parties to wish to resolve their disputes relating to the termination of the Court's Remedial Decrees, rather than placing a decision concerning those disputes in the Court's hands. The issue of whether the vestiges of segregation had been removed to the extent practicable, and whether the Defendants have complied with the Court's Remedial Decrees would have consumed considerable time, and the outcome would be uncertain, making compromise all the more appropriate.

Lastly, the Court considers the manageability of a trial in this case. Conducting a trial or hearing to determine whether to terminate or continue the Remedial Decrees and to address the parties' disputes

would have required a lengthy time commitment from the Court, the Special Master, the Oversight Committee, and counsel, and would have required everyone involved in this litigation to devote significant time and resources to the trial or hearing. A hearing or trial also would have required testimony from experts and various witnesses. To say the least, a hearing or trial would be lengthy and logistically complicated, and would result in great expense for all parties. For those reasons, the Court concludes that the risks faced by the parties and the difficulty in managing a trial or hearing counsel in favor of accepting the proposed Settlement Agreements.

**b. The Stage of Proceedings at Which Settlement Was Achieved**

The fact that all discovery has been completed and the case is ready for trial is important, because it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case. *Domestic Air,* 148 F.R.D. at 314 (quoting *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975)). In this case, the Court has conducted two bench trials and issued two lengthy Remedial Decrees, and the case has remained under the Court's supervision for over fifteen years. Also, as previously mentioned, counsel, under the able supervision of the Special Master, engaged in hard-fought settlement negotiations over many months. Counsel also engaged in discovery concerning the various objections to the termination of the Remedial Decrees.

Given the circumstances described above, the Court is confident that the parties and their counsel sufficiently developed the facts and gained a thorough understanding of the merits of the case prior to entering into the proposed Settlement Agreements. The late stage at which the

parties agreed to the proposed Settlement Agreements therefore counsels in favor of accepting the proposed Settlement Agreements.

### c. The Range of Possible Recovery and the Point on or Below the Range of Possible Recovery at Which the Settlement is Fair, Adequate, and Reasonable

Once again, when determining whether the proposed settlement is fair, adequate, and reasonable, the Court should compare the settlement terms "with the likely rewards the class would have received following a successful trial of the case." *Cotton*, 559 F.2d at 1330. When making this comparison, the Court should keep in mind that "compromise is the essence of a settlement," and "should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.' " *Id.* (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524–25 (S.D.N.Y.1972)). The Court also may take into account practical considerations. *Id.*

With reference to the class claims, the Court finds that the proposed relief contained in the proposed Settlement Agreements is reasonable and is within the range of possible remedies permitted by law. The proposed relief is designed to further the goals of the Court in removing the vestiges of segregation, and is the most practicable and efficient means of furthering those goals. The Court therefore finds that the proposed relief is fair, adequate, and reasonable as compared to the range of possible recovery in this action.

### d. The Complexity, Expense, and Duration of the Litigation

As previously discussed, the Court is well aware that this is a very complex, expensive, and lengthy case. Indeed, the case has remained pending for over twenty-five years, and has required the Court, counsel, the Special Master, and the Oversight Committee to devote significant amounts of time and resources to achieve the goals of the litigation and to implement the Court's Remedial Decrees. This factor therefore counsels in favor of approving the proposed Settlement Agreements.

### e. The Substance and Amount of Opposition to the Settlement

When determining whether a proposed settlement is fair, adequate, and reasonable, the Court must "examine the settlement in light of the objections raised." *Cotton*, 559 F.2d at 1331. "In assessing the fairness of a proposed compromise, the number of objectors is a factor to be considered but is not controlling." *Id.* Indeed, "[a] settlement can be fair notwithstanding a large number of class members who oppose it." *Id.* At some point, however, objections from the class may become so numerous that a court should decline to approve a settlement. *Id.* at 1216. No percentages are determinative of this question; instead, "each case must turn on its own facts." *Id.* The significance of the numbers of objectors to a settlement agreement "necessarily will vary depending on the issue that is settled and the amount of opposition." *Id.* at 1217.

When assessing objections, the Court "is entitled to take account of the judgment of experienced counsel for the parties." *Pettway*, 576 F.2d at 1215. This rule, however, does not mean "that the approval of plaintiffs' counsel will always be determinative or that the number of objectors to the settlement is not a significant consider-

ation." *Id.* Instead, "in reviewing a proposed settlement the district court should always consider the possibility that an agreement reached by the class attorney is not in the best interests of the class." *Id.* at 1216.

As previously described, Defendant AAMU has objected to the terms of the Settlement Agreement between the Knight–Sims Plaintiffs and the State Defendants to the extent the agreement limits the use of the $7.3 million in new capital funding to be provided to Defendant AAMU for use in facilities directly related to instructional or research activities. In particular, Defendant AAMU wants the freedom to spend part of the $7.3 million on the maintenance of existing student dormitories. Defendant AAMU has represented that many of its older dormitories need substantial maintenance related to roofs, plumbing, and electrical systems. Defendant AAMU does not propose to use the funds to construct new dormitories nor does it request that all of the awarded funds be devoted to dormitory maintenance.

The Court will authorize Defendant AAMU to use up to $2 million of the 7.3 million dollars it is to receive for maintenance work on existing student dormitories, provided, however, that the funds may not be spent for maintenance on any dormitory built with proceeds from the bond issue used to build the current Defendant AAMU football stadium.

The State of Alabama filed a Conditional Objection to the proposed Settlement Agreements between the Knight Plaintiffs and other Defendants. That Objection did not reach the substance of the proposed Settlement Agreements, but instead involved the State's justifiable concern that those proposed Settlement Agreements not obligate the State to provide funding other than what it agreed to provide in its own separate proposed Settlement Agreement. The Court finds that the State's conditional objection is well-taken, and will incorporate the language requested by the State into the judgment portion of this Order. This action eliminates any concerns raised by the State's conditional objection.

As previously discussed, only six members of the Plaintiff class filed objections to the proposed Settlement Agreements in a timely fashion. The Court has reviewed and considered each of the timely-submitted written objections to the proposed Settlement Agreements. While the Court understands and appreciates all of the concerns raised by the various members of the Plaintiff class who submitted written objections, the Court finds that those concerns do not justify denying approval to the proposed Settlement Agreements. In particular, many of the objections involve issues concerning individual faculty and administrative employment issues, and, as such, are simply outside of the goals of this litigation—to eliminate vestiges of *de jure* segregation in Alabama's system of public higher education. For the reasons discussed below, the Court finds that, through good faith compliance with the terms of the proposed Settlement Agreements, the Defendants will have satisfied their constitutional and statutory burdens of eliminating, to the extent practicable and consistent with sound educational practice, the vestiges of *de jure* segregation remaining in their institutional conditions, policies, and practices, and have demonstrated their commitment to continuing to operate in a constitutional and non-discriminatory fashion. *United States v. Fordice,* 505 U.S. 717, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992).

With respect to the objection filed on November 28, 2006, by Dr. Davis, the Court finds that the communications from

Dr. Davis, in essence, involve individual claims of employment discrimination by Dr. Davis, and that the communications do not raise objections that are relevant to the issues in this case. The Court has made clear from the beginning of this litigation that the instant litigation is not a forum for individual employment-related disputes, and the Court will not make an exception to that rule in this instance. In any event, the proposed Settlement Agreements do not in any way impact or impede the prosecution of any individual employment discrimination claims by Dr. Davis or any other member of the Plaintiff class. Consequently, Dr. Davis's objection, even if properly filed, does not justify withholding approval of the proposed Settlement Agreements.

In sum, the Court concludes that the substance and amount of opposition to the proposed Settlement Agreements do not justify withholding approval of the proposed Settlement Agreements. In particular, only six members of the Plaintiff class filed objections, and those objections do not implicate whether Defendants have satisfied the requirements of *Fordice*, and do not indicate that terminating the Remedial Decree is inappropriate. This factor consequently counsels in favor of approving the proposed Settlement Agreements.

### f. Provisions in the Settlement Agreements for Payment of Class Counsel's Fees

The Court pays attention to the amount of attorneys' fees awarded to class counsel because "the simultaneous negotiation of class relief and attorney's fees creates a potential for conflict." Manual for Complex Litigation (Third) § 30.42, at 239 (1995). The majority of the proposed Settlement Agreements do not contain provisions pertaining to payment of counsel fees for Plaintiffs. With respect to the pro-

posed Settlement Agreements that contain such provisions, the fees were negotiated extensively. The Court has considerable familiarity with attorneys' fees in class action cases and in this particular case, and concludes that the fees to be paid are reasonable, especially in light of the time and effort that counsel for the Plaintiff class expended on this case. The Court therefore finds that the proposed Settlement Agreements are not motivated by a desire for attorneys' fees, and that the proposed Settlement Agreements consequently do not raise the potential for counsel to face a conflict of interest. This factor supports the approval of the proposed Settlement Agreements.

### g. Whether the Named Plaintiffs Are the Only Class Members to Receive Monetary Relief, or Are to Receive Monetary Relief That Is Disproportionally Large

None of the proposed Settlement Agreements provide for any named Plaintiffs to receive monetary relief. This factor therefore counsels in favor of approving the proposed Settlement Agreements.

### h. Whether Particular Segments of the Class Are Treated Significantly Differently From Others

With regard to the relief to be provided to the class, the proposed Settlement Agreements treat all class members, including the named Plaintiffs, identically. The uniformity of relief provided to all class members supports acceptance of the proposed Settlement Agreements.

### i. Summary

█ In sum, the Court finds that all of the above factors counsel in favor of approving the proposed Settlement Agreements. Consequently, the factors traditionally considered in connection with

approval of a Settlement Agreement in a class action involving injunctive relief all support approving the proposed Settlement Agreements. Because this case arises in the higher education desegregation context, however, the Court still must determine whether the proposed Settlement Agreements satisfy the constitutional requirements established by *Fordice*.

### j. Constitutional Requirements

Applicable desegregation law requires the Court to determine whether the Defendants have complied in good faith with the requirements of the 1991 and 1995 Remedial Decrees and whether through that compliance any remaining vestiges of segregation have been eliminated to the extent practicable and consistent with sound educational practices. The Court also must satisfy itself that the State's system of public higher education will continue to operate in a constitutional and non-discriminatory fashion before it can declare the system to be unitary. To that extent, the proposed Settlement Agreements primarily focus on continuing to improve meaningful African–American participation in Alabama's system of public education.

Based on the evidence submitted by the parties and the Court's own familiarity with this litigation and the proposed Settlement Agreements, the Court reaffirms its previous findings that the terms of the proposed Settlement Agreements are fair, reasonable, and consistent with the requirements of the Constitution and laws of the United States. The Court further reaffirms its findings that, through good faith compliance with the terms of the Settlement Agreements, the Defendants have satisfied their constitutional and statutory burdens of eliminating, to the extent practicable and consistent with sound educational practice, the vestiges of *de jure* segregation remaining in their institutional conditions, policies, and practices, and have demonstrated their commitment to continuing to operate in a constitutional and non-discriminatory fashion, and that with the approval of the proposed Settlement Agreements addressed in this Order, the system is unitary. Thus, subject only to final resolution of the claims pending on appeal, the Court finds that the Defendants are in full compliance with the law, and that, therefore, there are no continuing policies, or practices, or remnants, traceable to *de jure* segregation, with present discriminatory effects which can be eliminated, altered, or replaced with educationally sound, feasible and practical alternatives or remedial measures and that, with the approval of the proposed Settlement Agreements addressed in this Order, the system is unitary; and, further, that this finding shall extend to all facets of the case and to all facets of public higher education in Alabama.

For all of the above reasons, the Court finds that approval of the proposed Settlement Agreements is appropriate under applicable law, and that terminating the Remedial Decrees also is appropriate. The Court therefore will approve the proposed Settlement Agreements, and will terminate the Remedial Decrees with only limited exceptions.

### D. Other Observations

The Court commends the attorneys who have participated in this litigation. Counsel for the parties have acted professionally, ethically, and highly responsibly, while zealously and ably representing their respective clients. Counsel share much of the responsibility for the progress of this case, and the Court commends them for their tireless and diligent efforts to work

toward reaching the goals of this litigation.[3]

The Court further commends the public officials of the State of Alabama, who have reached across party lines to implement the terms of the Court's Remedial Decrees and to resolve this litigation. Indeed, every public official in Alabama called upon by the Court's Orders to act in this matter has willingly and promptly done so. This day would not have arrived without the diligent and dedicated work of those public officials, and the Court expresses its great appreciation for their efforts and cooperation.

The Court particularly commends the members of the Oversight Committee and the Special Master, Carlos González, for their tireless work and leadership in managing this complex litigation and assisting the Court and the parties in reaching the goals of this litigation. In particular, the members of the Oversight Committee, Lieutenant General Julius Becton, President Emeritus, Prairie View University, Dr. Robben Fleming, President Emeritus, The University of Michigan, Dr. Harold Enarson, President Emeritus, The Ohio State University, and Dr. Bryce Jordan, President Emeritus, The Pennsylvania State University, all of whom already were esteemed academic and educational leaders, devoted their considerable expertise and wisdom to devising remedies that would best allow the Court to implement its Remedial Decrees, as well as to supervising the implementation of those Decrees. The objectives of this litigation could not have been achieved without the tireless efforts of the Oversight Committee, and the Court expresses great appreciation to the members of the Oversight Committee for their efforts in this case.

Finally, the Court expresses its great appreciation to the Special Master, Carlos González. Mr. González served as a law clerk to the Court during the period of the Court's first bench trial in this case, and worked tirelessly through that entire six-month trial and the following months to assist the Court in producing its 1991 Remedial Decree. In recognition of Mr. González's considerable knowledge of this case, and in recognition of the Court's need for a highly able individual to assist the Court and the parties in implementing the Court's Remedial Decree, the Court appointed Mr. González as the Special Master in this action. Since his appointment as the Special Master, Mr. González has devoted innumerable hours of his own time to interacting with the Oversight Committee and counsel for the parties, to reviewing reports and pleadings filed by the parties, and to attending hearings conducted by the Court, including the 1995 second bench trial in this action. Mr. González's diligent and highly-skilled efforts made the Court's management of this case possible, and relieved the Court's staff of bearing the burden of supervising this case on a regular basis. The Court especially appreciates Mr. González's use of his talents as a

---

3. The Court also wishes to recognize the work of the State Defendants' counsel, Robert Hunter. Mr. Hunter has worked as counsel for the State Defendants since before the start of the Court's first trial of this action in 1990. Except for a brief interruption from around 1998 through 2002, Mr. Hunter has been involved in this case since the Court's own involvement. For the last four years, Mr. Hunter, who is now general counsel for ALTEC Industries, has ably served the Court and the State without remuneration as a matter of public service. Mr. Hunter's work has been exemplary and invaluable to the interests of his clients, and also played a key role in bringing the parties and the Court to this very special day. The Court expresses its personal appreciation to Mr. Hunter and to ALTEC Industries for allowing Mr. Hunter to serve his state in this very important and responsible role.

highly experienced and successful mediator and his knowledge of the case to resolve many of the issues that arose in this litigation informally, thus eliminating the need for formal action by the Court. Mr. González has responded immediately and willingly to every request of the Court and counsel, and the Court is well aware that the parties would not have been able to resolve the issues in this litigation without Mr. González's efforts. The Court consequently commends Mr. González and expresses its great appreciation to him for his work in this case.

### III. Conclusion

ACCORDINGLY, the Court now memorializes its oral Order of December 5, 2006, approving the proposed Settlement Agreements and adopting those Agreements' terms as the Order of this Court. This Order supplements the Court's reasoning for adopting the proposed Settlement Agreements and memorializes those reasons as part of the written record of the case.

It is **ORDERED, ADJUDGED,** and **DECREED** as follows:

1. The plaintiff class certified on June 15, 1990, consisting of "all black citizens of Alabama and all past, present and future students, faculty, staff and administrators of Alabama State University and Alabama A & M University," is **HEREBY REAFFIRMED.** *Knight v. Alabama,* No. 83–M–1676–S, slip op. at 9 (N.D. Ala. June 15, 1990); 787 F.Supp. 1030, 1051 (N.D.Ala. 1991).

2. The issues pending resolution of the Knight–Sims' Plaintiffs' appeal from this Court's Orders of October 5, 2004, Docket No. 3294, and February 10, 2005, Docket No. 3320, are **HEREBY SEVERED** from this action, pursuant to Federal Rules of Civil Procedure 23(d) and 42(b), subject to the conditions set out in section XI of the proposed Settlement Agreement between the Knight–Sims Plaintiffs and the State Defendants, Docket No. 3469.

3. The Settlement Agreements between the Knight–Sims Plaintiffs and the Defendants listed above, Docket No. 3427, Docket No. 3452, Docket No. 3460, Docket No. 3461, Docket No. 3462, Docket No. 3463, Docket No. 3465, Docket No. 3466, Docket No. 3467, and Docket No. 3469, are **HEREBY FINALLY APPROVED,** and said Settlement Agreements are **HEREBY INCORPORATED** in the Final Judgment.

4. Except as previously stated with respect to the severed claims, the Court finds that the Knight–Sims class representatives, and all class members, have released all claims against the Defendants, as set forth in the Settlement Agreements.

5. The settling Defendants, and each of them, are **HEREBY PERMANENTLY ENJOINED** to implement the Settlement Agreements finally approved herein, including providing the funding designated in said Agreements. All other injunctions in this action not referred to in said Settlement Agreements are **HEREBY DISSOLVED.**

6. While the parties to said Settlement Agreements are free to petition the Legislature for funding to cover the requirements of said Agreements, in approving said Agreements, it is not the intent of the Court to require any funding by the State beyond that required in the Settlement Agreement between the State and the Knight Plaintiffs, nor is it the intent of the Court to require ACHE to do anything beyond those things it has agreed to do in that Agreement. Any failure of the State to provide funds for things required in Settlement Agreements to which it is not a party will not constitute a breach of any of

the approved Agreements or a violation of this Order.

In the State Defendants' Settlement Agreement with the Knight Plaintiffs, the parties have recognized that the $10,000,000 referenced in II(3) and the balance of the annual $2,000,000 referenced in 11(3)(g), which are to be deposited into the ASAP fund, are subject to reversion pursuant to Ala.Code Section 41–4–93 unless action is taken to encumber those funds. The parties have indicated their agreement that the Governor should take action to encumber those funds to avoid reversion. The Court has been impressed that the State of Alabama has fulfilled every commitment undertaken to comply with this Court's Remedial Decrees and has no doubt that the Governor will do that to which he has agreed. But the Court has been careful not to require anything of the Legislature, and the Court recognizes that the efforts of the Governor to seek legislative action on this subject might prove unsuccessful for any number of reasons unrelated to this case. Were that to occur and the funds to revert, a significant factor in the Court's consideration of the fairness of the State's settlement agreement, the provision of need-based financial aid for students in higher education in Alabama, would disappear. Neither the State Defendants nor the Knight Plaintiffs want that to occur. See Docket No. 3469, Section II 3(d) and (g). Accordingly, the Court **ORDERS** that the monies referenced in II(3) and II(3)(g) of the Settlement Agreement are encumbered and are to be expended as set forth in the Settlement Agreement between the State Defendants and the Knight–Sims Plaintiffs. The funds are not to be subject to reversion under Ala.Code Section 41–4–93.

7. Subject only to final resolution of the claims pending on appeal that are severed in this Final Judgment, the Court finds that, based on its final approval of these Settlement Agreements, including the commitments contained therein, the Defendants are in full compliance with the law, and that, therefore, there are no continuing policies, or practices, or remnants, traceable to *de jure* segregation, with present discriminatory effects which can be eliminated, altered, or replaced with educationally sound, feasible, and practical alternatives or remedial measures, and that, with the approval of the proposed Settlement Agreements addressed in this Order, the system is unitary; and, further, that this finding shall extend to all facets of the case and to all facets of public higher education in Alabama.

8. The objection of Defendant AAMU to the Settlement Agreement between the Knight–Sims Plaintiffs and the State Defendants related to capital funding (Docket No. 3372 at 1–4) is **GRANTED.** Defendant AAMU is authorized to use up to $2 million of the 7.3 million dollars it is to receive for maintenance work on existing student dormitories, provided, however, that the funds may not be spent for maintenance on any dormitory built with proceeds from the bond issue used to build the current Defendant AAMU football stadium.

9. Any motions and/or objections that have not been resolved by the Settlement Agreements approved today or withdrawn, or resolved by previous Orders of the Court are **DENIED AS MOOT.**

10. Subject only to final resolution of the claims pending on appeal that are severed in this Final Judgment, the Court **HEREBY DISMISSES** on the merits and with prejudice (i) all claims against each of the defendants set forth in the complaint, as amended, (ii) all claims against each of the Defendants set forth in the complaint-in-intervention, and (iii) all claims of racial discrimination against each of the Defendants asserted before the Court throughout the pendency and trials of the action

including, without limitation, claims of system or institutional aspects, features, policies, and practices alleged to be remnants of the *de jure* system.

11. The Court **HEREBY DISMISSES** on the merits and with prejudice all claims asserted against the Defendants by the United States of America in this action in any pleading filed by the United States of America or throughout the pendency and trials of this action, including, without limitation, claims of system or institutional aspects, features, policies, and practices alleged to be remnants of the *de jure* system. The Court **GRANTS IN PART AND DENIES IN PART** the Opposition to Termination of Remedial Decrees filed by the United States of America, Docket No. 3374. The Court **GRANTS** the Opposition to the extent that the Court's Order preserves the programs that are not yet completed or terminated under the terms of the 1995 Remedial Decree, but **DENIES** all other portions of the Opposition.

12. The Court attaches as Exhibit A to this Order and Final Judgment a schedule summarizing the remaining funding obligations established by the Court's Remedial Decrees, the Court's various Orders and the Settlement Agreements approved in this Order and Final Judgment. This schedule is intended to collect in one place all of the financial obligations that remain in this case, and is not an addition to the amounts set forth in the various Remedial Decrees and Orders of the Court, or in the Settlement Agreements approved today.

The Court **DIRECTS** the Clerk to assign the severed action a new civil action number, and to **CLOSE** *Knight v. Alabama*, Civil Action File No. 2:83–CV–1676.

IT IS SO ORDERED, this the _____ day of December, 2006.