On Applications for Rehearing

PER CURIAM.
In Perdue v. Green, 127 So.3d 343 (Ala.2012), this Court vacated the trial court’s judgment approving a class-action settlement concluding litigation related to the Alabama Prepaid Affordable College Tuition (“PACT”) Trust Fund a/k/a The Wallace-Folsom Prepaid College Trust Fund on the ground that the settlement agreement impermissibly contravened Act No. 2010-725, Ala. Acts 2010/ specifically the portion of § 16-33C-19, Ala.Code 1975, that explicitly forbade the PACT board from violating “the contractual relationship existing between a PACT contract holder and the PACT board.” Soon after the release of our decision, the legislature enacted Act No. 2012-198, Ala. Acts 2012, repealing § 16-33C-19.
The PACT board now applies for a rehearing of our decision vacating the trial court’s judgment, contending, among other things, that the impediment to approval of the class-action settlement agreement, which this Court found in the statutory language of § 16-33C-19, has been removed. In support of its applications, the PACT board emphasizes this Court’s duty to apply “any change in the substantive law” that may occur while a case remains pending on appeal.[2] Therefore, the PACT *383 board asserts, this Court must apply Act No. 2012-198, which repealed § 16-33C-19, to the facts of the present case. It further notes the legislature’s contemporaneous enactment of § 16-33C-23, which grants to the PACT board broad powers “to negotiate, accept, and implement a legally binding resolution with PACT purchasers and beneficiaries to address any actuarial deficit in the PACT Trust Fund.” The PACT board notes that Act No. 2012-198 states that it “is ... remedial and curative and is retroactive to April 30, 2010,”[3] and argues that the new law must be applied retroactively “unless it impairs some vested right acquired under the prior law.” In their response in opposition to the PACT board’s applications for rehearing, the objecting class members — Carol M. Perdue, William D. Motlow, Jr., and Shane Sears — maintain that retroactive application of Act No. 2012-198 would unconstitutionally strip them of certain vested rights. See, e.g., John E. Ballenger Constr. Co. v. State Bd. of Adjustment, 234 Ala. 377, 381, 175 So. 387, 390 (1937) (“[I]t is said that the repeal of a statute makes it stand as though it never existed except as to vested rights, and that the Legislature has full power to take away rights conferred by statute which have not become vested.... ”).
Resolution of the retroactivity issue necessarily requires a determination as to the constitutionality of the retroactive application of Act No. 2012-198 under the facts of this case. In keeping with our general rule that such issues should be first addressed by the trial court, see, e.g., Alabama Power Co. v. Turner, 575 So.2d 551, 553 (Ala.1991), we grant the applications for rehearing and remand this case for further proceedings consistent with this opinion. Upon the conclusion of those proceedings, the trial court shall enter an order and file it with this Court on return to remand for further appellate proceedings.
1101337 — APPLICATION FOR REHEARING GRANTED; REMANDED.
1101506 — APPLICATION FOR REHEARING GRANTED; REMANDED.
WOODALL, PARKER, and SHAW, JJ., and HOUSTON, LYONS, PITTMAN, and MOORE, Special Justices,* concur.
MALONE, C.J., and STUART, BOLIN, MURDOCK, MAIN, and WISE, JJ., recuse themselves.

On Return to Remand

PER CURIAM.
Immediately following the release of our previous opinion in this matter, see Perdue v. Green, 127 So.3d 343 (Ala.2012) (“Per-due I”), the legislature passed Act No. 2012-198, Ala. Acts 2012 (“the 2012 Act”), repealing the statutory provision underpinning our decision in Perdue I, in which we vacated the judgment of the Montgomery Circuit Court approving a settlement agreement concluding litigation involving the Alabama Prepaid Affordable College Tuition (“PACT”) program. The legisla *384 ture’s action requires this Court to alter our previous decision.

BACKGROUND

As discussed in Perdue I, this case involves the PACT program and its board of directors (“the PACT board”). The PACT program allows persons to purchase contracts in advance of a child’s attending college; the contracts provide certain tuition payments from the PACT program’s trust fund if the child subsequently attends a college or university. See §§ 16-33C-5, -6, Ala.Code 1975, and Johnson v. Taylor, 770 So.2d 1103, 1104 (Ala.Civ.App. 1999).
In January 2010, numerous plaintiffs[1] filed a class-action complaint against the PACT board. In Perdue I we summarized the pleadings below as follows:
“Acting under the premise that the PACT program was created to allow the designated beneficiary of a PACT contract to attend college without being required to pay tuition or mandatory fees, regardless of the financial health of the PACT Trust Fund and/or the ability of the PACT program to pay, the plaintiffs alleged that the PACT board had indicated its inability to fulfill outstanding PACT contracts.... The plaintiffs requested a declaratory judgment construing the respective rights and obligations of the individual classes under the PACT contracts and the controlling statutes so they could decide whether to remain in the PACT program or to cancel their existing contracts and seek a refund (less any applicable tax penalty). They also stated a claim under 42 U.S.C. § 1983, alleging violations of rights guaranteed by various provisions of the United States Constitution.
“The PACT board answered and filed a counterclaim. In its ‘counterclaim for declaratory relief,’ the PACT board alleged that, based upon actuarial projections, the PACT Trust Fund lacked sufficient assets to continue payment of full tuition expenses past the year 2015. The PACT board further noted that it had ‘adopted proposed amendments to its existing rules and regulations,’ which, though specifically aimed at remitting payment for mandatory fees and expenses to all PACT contract holders, might result in payment of ‘an amount less than the full tuition and fees charged by the respective college or university’ in direct conflict with the plaintiffs’ interpretation of their contract rights. Thus, the PACT board requested, pursuant to Ala.Code 1975, § 6-6-220 et seq. and § 19-3B-101 et seq., the trial court’s assistance in construing the PACT board’s powers and responsibilities under the statutes establishing the PACT program; a determination as to whether the proposed changes to its rules and regulations violated the statutory, constitutional, or contractual rights of the PACT contract holders and/or the PACT contract beneficiaries; and a determination as to whether the PACT board could liquidate the PACT Trust Fund and distribute the remaining assets.”
Perdue I, 127 So.3d at 351 (footnotes omitted).
While the underlying action was pending in the trial court, the legislature enacted Act No. 2010-725, Ala. Acts 2010 (“the *385 2010 Act”), which, among other things, amended certain statutory provisions relating to the PACT program. Section 12 of the 2010 Act, which was effective April 30, 2010, and which was codified at § 16-33C-19, Ala.Code 1975,[2]
“strongly encourage[d] the PACT board to make any financially beneficial changes to PACT rules, procedures, or policies, to the extent that the PACT board is authorized or permitted to make such changes and to the extent that such changes would not violate the contractual relationship existing between a PACT contract holder and the PACT board.”
(Emphasis added.)
Ultimately, the trial court certified the underlying action as a class action, and the parties eventually negotiated a proposed settlement:
“On May 5, 2011, the parties submitted a joint motion, along with a proposed settlement agreement, requesting that the trial court approve the proposed class-action settlement agreement, the professed purpose of which was ‘to provide Class Members with the maximum amount of benefits from the available assets.’ In order to effect that stated purpose, the proposed settlement agreement purported to modify the terms of the outstanding PACT contracts. The proposed modification was accompanied by a purported waiver by the class members of the application of Ala.Code 1975, § 16-33C-1 et seq., and the terms of their individual PACT contracts to the extent the provisions in either the statutes or the PACT contracts were inconsistent with the terms of the settlement agreement.
“Additionally, the proposed settlement agreement set tuition and fee payments at tuition and fee rates applicable for fall 2010 ... and required class members to be personally responsible for payment of any tuition and fees not covered by the PACT program payments. Class members were also afforded, as an alternative remedy, the right to cancel their PACT contracts and to receive refunds less any applicable taxes or penalties.
“The settlement agreement also included, as part of its terms, an award of attorney fees to class members’ counsel in the amount of $4,950,000 and an award for litigation-related expenses in the amount of $15,000. The settlement agreement also contained a release of class members’ potential claims against the PACT board (‘and all other related persons and entities’), including the following:
“ ‘[A]ny and all matters, demands, liabilities, actions, lawsuits, liens, debts, damages, obligations, claims, and any other expenses, charges, or costs of every kind and nature, known or unknown, suspected or unsuspected, howsoever arising, at law or in equity, whether on an individual or representative basis, which were asserted or which could have been asserted as of the execution of this Settlement, including (but not limited to) those claims which were asserted or which could have been asserted in [the underlying action] as well as any and all other claims relating to the operation and administration of the PACT Program and/or the PACT Trust Fund, including (but not limited to) the payment/non-payment of tuition and fees and all claims available under the Uniform Trust Code ... other than the obligations embodied in this Settle *386 ment and any judgment entered by the court approving or adopting this Settlement.’ ”
Perdue I, 127 So.3d at 353-54.
On May 5, 2011, the trial court entered an order preliminarily approving the proposed settlement agreement and setting a fairness hearing. The trial court directed that notice of the proposed settlement be provided by mail to class members whose addresses were discernible from the records of the PACT program. Additionally, a notice was posted on the Web site for the PACT program. Numerous written objections were subsequently filed in the trial court by certain class members.
Testimony was presented at the subsequent fairness hearing, including testimony by an actuary employed by the PACT board. As detailed in Perdue I, the actuary testified that the assets of the PACT program were insufficient to meet its future liabilities. The proposed settlement, it was asserted, was intended to ensure that the available funds were evenly distributed so that as many beneficiaries as possible received as much as possible, and the limits on the tuition payments rendered the settlement actuarially viable. Further, the chairman of the PACT board testified that the PACT program’s investments had not performed as well as anticipated and that its obligations far exceeded its assets. The chairman testified that, other than the proposed settlement agreement, the PACT board had no solution that would allow it to provide benefits to all PACT contract holders and beneficiaries. Certain persons objecting to the settlement were provided an opportunity at the hearing to argue in opposition and raised numerous issues, including the argument that the proposed settlement agreement was contrary to the 2010 Act. In an order entered July 27, 2011, the trial court approved the proposed settlement agreement, finding that it was fair, adequate, and reasonable.
Carol M. Perdue, individually and as next friend and guardian of her daughter, Anna K. Perdue; William D. Motlow, Jr.; and Shane Sears (hereinafter collectively referred to as “the objectors”), all of whom are objecting class members, appealed the trial court’s judgment approving the settlement agreement.[3] Although the objectors raised numerous issues in Perdue I, this Court addressed only one issue, which pre-termitted discussion of the remaining issues. Specifically, we focused on § 16-33C-19:
“It is clear that the legislature, in enacting Act No. 2010-725, attempted to rectify the financial difficulties of the PACT program.... That said, the legislature also clearly undertook to preserve the benefits originally promised to PACT contract holders. Section 12 of Act No. 2010-725, now codified at § 16-33C-19 and quoted above, provides that the PACT board was ‘strongly encouraged’ to make ‘any financially beneficial changes to PACT rules, procedures, or policies, to the extent that the PACT board is authorized or permitted to make such changes and to the extent that such changes would not violate the contractual relationship existing between a PACT contract holder and the PACT board.’ The PACT board was thus encouraged to make changes, but limited in making only those changes that ‘would not violate’ the then ‘exist- *387 mg’ contractual relationship between it and the contract holders....
“The settlement agreement states: ‘The purpose and effect of this Settlement shall be to modify the dispositive terms of the PACT Trust Fund and/or the terms of the contractual relationships between Class Members and the PACT Board.’ It was undisputed in the trial court and it is undisputed on appeal that the terms of the settlement agreement alter the contract of each PACT contract holder, although there is some dispute as to how differing versions of the PACT contracts are affected. The objectors do not consent to any such modification of their contracts or waive any statutory rights. Thus, to the extent the PACT board acted to change its existing rules, procedures, or policies to accept modification of the PACT contracts, as it indicated in its counterclaim that it had done, it violated the contractual relationship with the PACT contract holders by exceeding the express limitation set out in § 16-3SC-19.”
Perdue I, 127 So.3d at 356-57 (footnotes omitted).
We rejected arguments by the plaintiffs and the PACT board that § 16-33C-19 did not prohibit the PACT board from entering into the settlement agreement:
“Here, it would contravene the plain language of § 16-33C-19 to allow the implementation of a settlement agreement that clearly ‘violate[s] the contractual relationship existing between [the] PACT Contract holder[s] and the PACT board.’ Thus, however well-intentioned, the settlement agreement is clearly contrary to state law.16
"16 During the fairness hearing, the trial court asked the chairman of the PACT board whether, ‘if [the trial court] gave approval to [the proposed] settlement, [the court] would ... be violating the laws of the State of Alabama.' The chairman responded: 'I believe it would.' ”
Perdue I, 127 So.3d at 358. We concluded:
“In undertaking to remedy the financial problems facing the PACT program, the legislature has explicitly placed certain limits on the PACT board’s authority to craft solutions that would violate the contractual rights provided to PACT contract holders. Neither the PACT board, under § 16-33C-19, nor the judiciary, under Ala. Const.1901, § 43, has the authority to ignore the explicit statutory law specifically enacted to address a particular situation.... Therefore, we can reach no other conclusion but that the trial court exceeded its discretion in approving a settlement agreement that is plainly ‘adverse to the enactments of the legislature, [and] is[, therefore,] illegal and void.’ Carring-ton[ v. Caller], 2 Stew. [175,] at 192 [ (Ala.1829) ].”
Perdue I, 127 So.3d at 360. We thus vacated the trial court’s order approving the settlement and remanded the cause.
While the PACT board’s application for rehearing was pending in this Court, the legislature passed the 2012 Act, which, among other things, specifically repealed § 16-33C-19. As to the repeal of § 16-33C-19, the 2012 Act stated that it was “remedial and curative and is retroactive to April 30, 2010,” the effective date of the 2010 Act. On July 11, 2012, we granted the application for rehearing and remanded this case to the trial court to consider the constitutionality of the retroactive application of the 2012 Act. Perdue v. Green, 127 So.3d 343 (Ala.2012). The trial court on September 17, 2012, entered an “Order on Remand” in which it concluded that the retroactivity provision of the 2012 Act was constitutional.
*388 On return to remand, the objectors challenge the trial court’s ruling. Alternatively, they renew the challenges in their initial briefs on appeal in Perdue I to the trial court’s approval of the settlement agreement, which were pretermitted by our disposition of the one issue.

DISCUSSION

I. Constitutional Challenge to the 2012 Act

The limitation in § 16-33C-19 on the power of the PACT board to diminish the contractual rights of the PACT contract holders was the linchpin of our holding in Perdue I and the sole basis for this Court’s vacation of the judgment approving the settlement agreement. There is no dispute that the retroactive repeal of that Code section would have the effect of removing § 16-33C-19 as a basis for our decision and invalidating the rationale of Perdue I; instead, the issue presented on return to remand is whether the retroactive application of the 2012 Act is constitutional.
“ ‘ “This court reviews de novo a trial court’s interpretation of a statute, because only a question of law is presented.” Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003).... ’
“Continental Nat’l Indent. Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005). Likewise,
“ ‘ “[o]ur review of constitutional challenges to legislative enactments is de novo.” Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala.2001). Additionally, acts of the legislature are presumed constitutional. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 110 (Ala.1998). See also Dobbs v. Shelby County Econ. & Indus. Dev. Autk, 749 So.2d 425, 428 (Ala.1999) (“In reviewing the constitutionality of a legislative act, this Court will sustain the act ‘ “unless it is clear beyond reasonable doubt that it is violative of the fundamental law.” ’ White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala.1989) (quoting Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)).”). We approach the question of the constitutionality of a legislative act “ ‘ “with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.” ’ ” Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000) (quoting Moore v. Mobile Infirmary Ass’n, 592 So.2d 156, 159 (Ala.1991), quoting in turn McAdory, 246 Ala. at 9,18 So.2d at 815).
“ ‘Moreover, in order to overcome the presumption of constitutionality, ... the party asserting the unconstitutionality of the Act ... bears the burden “to show that [the Act] is not constitutional.” Board of Trustees of Employees’ Retirement Sys. of Montgomery v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973). See also Thom v. Jefferson County, 375 So.2d 780, 787 (Ala.1979) (“It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality....”).’
“State ex rel. King v. Morton, 955 So.2d 1012,1017 (Ala.2006).”
Madaloni v. City of Mobile, 37 So.3d 739, 742-43 (Ala.2009).
The objectors maintain that the application of the 2012 Act in this case would violate certain constitutional rights.[4] *389 More specifically, they maintain that retroactive application of the 2012 Act impairs rights accruing to them under their outstanding PACT contracts and/or the repealed portions of the 2010 Act, which rights, they say, vested prior to the enactment of the 2012 Act. Contrary to the objectors’ position, however, the appellees argue that the 2012 Act does not work a legislative curtailment of any rights, vested or otherwise, and does not directly impair any contractual obligation.
“An act that is expressly retroactive will be given retroactive effect unless it impairs vested rights. Alabama Alcoholic Beverage Control Bd. v. City of Pelham, 855 So.2d 1070 (Ala.2003). Section 95 of Art. IV of the Alabama Constitution of 1901 provides: ‘After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit.’ ...”
Ex parte F.P., 857 So.2d 125, 137 (Ala. 2003). See also Blake v. State ex rel. Going, 178 Ala. 407, 411, 59 So. 623, 625 (1912) (“It is a general rule ... that when a statute is repealed it stands as if it had never existed, except as to vested rights which have accrued under its operation.”). Further, Ala. Const.1901, Art. I, § 22, provides that “[no] law, impairing the obligations of contracts, ... shall be passed by the legislature.”
In her brief, Perdue appears to start with the premise that all PACT contract holders have a vested right in their contracts and that the settlement agreement diminishes those contractual rights. She then points to statements by the plaintiffs’ class counsel and the PACT board members indicating that the 2012 Act is a “blessing” or “endorsement” of the settlement agreement and argues that such blessing or endorsement of the settlement agreement equates to the legislation diminishing vested rights:
“In the words of the Appellees, ‘the Legislature has undertaken to grant its endorsement of the parties’ efforts to achieve a class wide compromise.’ In other words, they aver that [the 2012 Act] was passed (according to Class Counsel) for the sole purpose of retroactively gaining approval of a prior settlement which itself admittedly diminished the contractual rights of the Class Members.
“However, [the 2012 Act] ... cannot be so applied if doing so would impair the vested contract rights of PACT purchasers and beneficiaries.... [I]t cannot be applied retroactively if it impairs a substantive, vested right.”
Perdue’s brief on return to remand, at 20.
We disagree. As the appellees argue, the 2012 Act does not impair anything. While it removes certain prohibitions on the actions of the PACT board— i.e., removes the barrier of § 16-33C-19 to the PACT board’s negotiation of the settlement agreement with the class members— the legislation itself neither diminishes, removes, or impairs any contractual rights or obligations, vested or not, nor mandates any particular result. The objectors point to nothing in the 2012 Act that curtails the rights and remedies of PACT contract holders; indeed, we are cited no authority indicating that a legislative enactment granting authority to a State entity can run afoul of § 22 or § 95 of the Alabama Constitution. It is the settlement agreement that alters the rights found in the PACT contracts, not the 2012 Act.
Perdue also contends that § 16-33C-19 provides a “defense” that, under § 95, cannot be retroactively repealed. As noted above, § 95 states: “After suit has been commenced on any cause of action, the legislature shall have no power to take *390 away such cause of action, or destroy any existing defense to such suit.” (Emphasis added.) Perdue states:
“[A]n absolute defense to this overreach by the [PACT board] was Ala.Code [1975,] § 16-33C-19, which allowed rule changes, but expressly prohibited the PACT Board from making any changes to the PACT Program that would ‘violate the contractual relationship existing between a PACT contract holder and the PACT Board.’ That same code section was deleted by [the 2012 Act], thus eliminating a defense to the [PACT board’s] counterclaim. Doing so clearly violates Article IV § 95 of the Alabama Constitution.”
Perdue’s brief on return to remand, at 25 (footnote omitted).
In explaining what constitutes a “defense to such suit” for purposes of § 95, this Court has stated: “We have held that [the ‘existing-defense’ provision of § 95] applies ‘only to matters of substance and not to matters of form or to statutes which are remedial in nature;’ [and] that ‘ “no person has a vested right in a particular remedy ... or in particular modes of procedure.” ’ ” Tyson v. Johns-Manville Sales Corp., 399 So.2d 263, 269 (Ala.1981) (quoting State Bd. of Optometry v. Lee Optical Co. of Alabama, 284 Ala. 562, 565, 226 So.2d 623, 625 (1969), quoting in turn 2 Frank E. Horack, Jr., Sutherland on Statutory Construction § 2218 (3d ed. 1943)). Further, the “existing defense” must be “vested.” Id.
Section 16-33C-19 was enacted after the underlying action was filed in the trial court. Further, the bar to the settlement agreement recognized in Perdue I as created by § 16-33C-19 was not in the nature of a statutory or common-law affirmative defense to a cause of action or a claim. The briefs before us do not discuss or address whether the argument that the PACT board did not have the power to accept the settlement agreement under § 16-33C-19 constituted an “existing defense” as contemplated by § 95, and there is no citation to caselaw, such as Tyson, discussing the proper analysis for that issue. In other words, we have no analysis or authority showing that the legal argument regarding the effect of § 16-33C-19 equates to a “defense” as that term is contemplated in § 95. Rule 28(a)(10), Ala. R.App. P., requires that arguments in appellate briefs contain discussions of facts and relevant legal authorities to support a party’s position; if the briefs do not contain the legal and factual analysis necessary to comply with the rule, then the argument is waived. White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008). Because the briefs on return to remand do not explain how § 16-33C-19 constitutes an “existing defense” under § 95, and because no authority in support of this argument is presented, the argument is waived.
Motlow and Sears appear to advance the position that some contract holders may have relied on the passage of the 2010 Act as a “representation” that the State was obligating itself to pay full tuition on the PACT contracts. However, although the 2010 Act made certain future funding appropriations and expressed the legislature’s belief that, based on certain actuarial projections, the program would be fully funded, see § 16-33C-16(b), Ala.Code 1975 (repealed by the 2012 Act), the 2010 Act actually expressed no obligation or guarantee. Because the 2010 Act was enacted after the underlying action was filed, the class members clearly were not relying on the subsequently added funding provisions of the 2010 Act or the restrictions on the PACT board’s powers in the 2010 Act when they purchased their contracts or when they filed this action. Further, at all *391 times, both before and after the enactment of the now repealed 2010 Act and under the settlement agreement, the class members continue to have the option to remain in or to withdraw from the PACT program. We see no merit in this argument.
Here, the retroactive application of the 2012 Act will not result in a taking of the class members’ contractual rights to payments of tuition and fees; rather, the 2012 Act was passed and is applied retroactively in order to remove a hurdle identified by this Court in Perdue I to the PACT board’s ability to negotiate a settlement that, with the consent of the class, results in the alteration of the contractual obligations. Given that Alabama law requires this Court to presume that the 2012 Act is constitutional and valid, that this Court is required to seek to sustain it rather than to strike it down, and that the objectors have failed to show that it is unconstitutional, we are constrained by Alabama law to uphold the ruling of the trial court as to the constitutionality of the retroactive application of the 2012 Act.

II. Remaining Challenges to the Settlement

Because the 2012 Act has removed § 16-3SC-19 as a basis on which to challenge the trial court’s approval of the settlement agreement, we now consider the additional grounds asserted by the objectors in their initial appeal.

A. The Class-Certification Process

“In reviewing a class-certification order, this Court looks to see whether the trial court exceeded its discretion in entering the order; however, we review de novo the question whether the trial court applied the correct legal standard in reaching its decision.” University Fed. Credit Union v. Grayson, 878 So.2d 280, 286 (Ala. 2003) (citing Reynolds Metals Co. v. Hill, 825 So.2d 100,104 (Ala.2002)).
1. Rigorous Analysis
Both the plaintiffs and the PACT board stipulated that certification of a class action was appropriate in this case; therefore, no challenges were initially lodged in the trial court to the class-certification process. Motlow and Sears contend on appeal that the trial court failed to conduct, before it certified the subject classes, the “rigorous analysis” required by § 6-5-641, Ala.Code 1975. Additionally, they maintain that the prerequisites of Rule 23(a) and 23(b), Ala. R. Civ. P., were not met. More specifically, they argue, there is a lack of both commonality and typicality between the class members and “the representative parties do not clearly and adequately protect the interest of the class.”
Other than their general citation to the requirements of Rule 23 and caselaw establishing the necessity of a rigorous analysis, no argument is offered or authority cited demonstrating that the trial court’s analysis and resulting order in this case are legally insufficient. A close reading of Motlow and Sears’s brief reveals that this argument simply restates the general dissatisfaction with the settlement terms, as discussed in more detail below. Notably, the brief fails to contain citations to the record or to the trial court’s certification order and also fails to identify any deficiencies attendant to the certification hearing.[5] With no citations to applicable au *392 thority in support of the scant argument presented and no argument applying legal authority to the facts of the present case, the objectors’ rigorous-analysis claim is waived for purposes of appellate review. Rule 28(a)(10), Ala. R.App. P.; White Sands Group, 998 So.2d at 1058; and Ma-daloni, 37 So.3d at .749 (“It is the appellant’s burden to refer this Court to legal authority that supports [his] argument.”).
2. Non-opt-out Class
Motlow and Sears also argue that the trial court’s certification of the class action — and, ultimately its imposition of the settlement terms on that class — without an “opt-out” provision both violates the class members’ due-process rights and conflicts with “dicta of the United States Supreme Court.” Motlow and Sears’s brief, at 24. This argument, however, is fraught with inconsistencies.
The record reflects that, following the PACT board’s filing of a stipulation evidencing its qualified, general agreement that class-based relief was proper and that certification could later be reevaluated, in December 2010 the trial court entered the order certifying the class. Specifically finding that the underlying action was “an appropriate case for class certification for the Plaintiffs under Rule 23(b)(2), [Ala. R. Civ. P.,] and for the [PACT board] on [its] Counterclaim under Rule 23(b)(l)(A)(B) [sic] [, Ala. R. Civ. P.],” the trial court certified several classes and subclasses.
In their brief, Motlow and Sears, in keeping with the trial court’s certification order, initially argue that “Alabama Courts do not allow a mandatory class to be certified under Rule 23(b)(2) when the predominant relief sought is damages.” In support of their argument, they cite Compass Bank v. Snow, 823 So.2d 667 (Ala.2001). Although the pinpoint citation to Snow included in their brief does not stand for the proposition for which it is identified, Snow does, generally, hold that “certifica *393 tion of a class pursuant to Rule 23(b)(2)[, Ala. R. Civ. P.,] is improper if the primary relief sought is money damages.” 823 So.2d at 678 (citations omitted). Later in the same argument section of their brief, however, Motlow and Sears acknowledge that “the [present] lawsuit has never asked [for] or sought monetary relief_” Mot-low and Sears’s brief, at 24. We agree. See Perdue I, 127 So.3d at 350-51 (identifying the plaintiffs’ claims as including a request for a declaratory judgment construing the respective rights and obligations of the parties under the PACT contracts and a claim under 42 U.S.C. § 1983 alleging violations of rights guaranteed by various provisions of the United States Constitution). Thus, it appears that Snow is inapplicable.[6]
To the extent that the objectors argue that the settlement agreement, which releases non-class-based claims for monetary damages, somehow evidences that monetary relief is at issue here and thus required Rule 23(b)(3) certification, we disagree. In First Alabama Bank of Montgomery, N.A v. Martin, 425 So.2d 415 (Ala.1982), we held that “the fact that a Rule 23(b)(1) or (b)(2) suit may ultimately result in a monetary recovery from a defendant does not prevent certification under those subdivisions.” 425 So.2d at 423 (citing Senter v. General Motors Carp., 532 F.2d 511 (6th Cir.1976); Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir.1971)). See also Muzquiz v. City of San Antonio, 378 F.Supp. 949 (W-D.Tex. 1974), affd, 520 F.2d 993 (5th Cir.1975), judgment vacated and remanded on other grounds, 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978) (upholding certification of Rule 23(b)(2) class where an accounting and restitution were sought along with injunctive relief). Therefore, the objectors have failed to demonstrate that the trial court erred in certifying the class as a non-opt-out class under Rule 23(b)(1) and (b)(2).

B. Assessment of the Proposed Settlement Agreement

1. Fairness, Adequacy, and Reasonableness
The objectors maintain that the trial court erroneously concluded that the settlement agreement was fair, adequate, and reasonable as to all class members. As the objectors acknowledge, the trial court must approve a settlement in class-action litigation. See Perdue I, 127 So.3d at 348; Rule 23(e), Ala. R. Civ. P. The proponents of any class-action settlement bear the burden of demonstrating that the proposed settlement is fair, adequate, and reasonable. The trial court’s findings are accorded “[g]reat weight,” and we review the trial court’s order approving such a settlement agreement to determine whether the trial court exceeded its discretion. Perdue I, 127 So.3d at 356; Gray-son, 878 So.2d at 286.
In determining whether the present settlement agreement was fair, adequate, and reasonable, the trial court considered the following factors outlined in Adams v. Robertson, 676 So.2d 1265 (Ala. 1995):
“(1) the likelihood of success at trial ...; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settle *394 ment is fair, adequate, and reasonable; (4) the complexity, expense, and duration of the litigation; (5) the substance and amount of opposition to the settlement; (6) the stage of the proceedings at which the settlement was achieved; and (7) the financial ability of [the defendant] to withstand a greater judgment and the potential for a judgment or judgments in an amount or amounts likely to trigger the Due Process considerations (as recognized in Green Oil Co. v. Hornsby, 589 So.2d 218 (Ala.1989)) relating to punitive damages. See, Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir.1984); City of Detroit v. Grin-nell Corp., 495 F.2d 448, 463 (2d Cir. 1974); and Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799 (3d Cir.1974), cert, denied, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974). Another factor considered by the trial court was whether proper notice was given.... ”
676 So.2d at 1273. See also Knight v. Alabama, 469 F.Supp.2d 1016, 1032 (N.D.Ala.2006). As explained in Knight, in evaluating the terms of a class-action settlement for fairness, adequacy, and reasonableness, the trial court “should compare the terms of the settlement agreement with the likely rewards that the ‘class would have received following a successful trial of the case.’ ” 469 F.Supp.2d at 1032 (quoting Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir.1977)).
The objectors contend that in the present case the trial court’s determination was defective in the following respects:[7]

a. Likelihood of success at trial

Initially, the objectors argue that the trial court erred in concluding that the class members’ potential lack of success should the matter proceed to trial weighed in favor of the approval of the settlement. Specifically, they maintain that an examination of the three factors identified by them as relevant to this determination, “(1) the merits of the class members’ claims, (2) the defenses raised by the defendants, and (3) the manageability of the trial,” does not support the trial court’s determination.
As to this factor, the trial court’s final judgment approving the settlement agreement specifically found that, other than legislative appropriations and its current assets, the PACT board had no means of honoring a potential judgment awarding full benefits to all class members; thus, the trial court concluded, it was unable to “say that the class members would'likely obtain a more favorable or more equitable result at trial than they would receive under the proposed Settlement.” Because the undisputed evidence adduced at the fairness hearing indicated the assets of the PACT trust fund were insufficient to fully pay tuition under the outstanding PACT contracts, we are constrained to agree with the trial court that the award guaranteed to each class member under the terms of the settlement agreement likely exceeds the reward the class members would receive if they were successful at trial. See Knight, 469 F.Supp.2d at 1033.
We further note that, given the alleged time-sensitive nature of the relief afforded by the settlement agreement, proceeding to trial would have consumed considerable time and would have further depleted the limited assets of the PACT program. As explained by the court in Knight:
“A hearing or trial also would have required testimony from experts and various witnesses. To say the least, a hearing or trial would be lengthy and logistically complicated, and would result in great expense for all parties. *395 For those reasons, the Court concludes that the risks faced by the parties and the difficulty in managing a trial or hearing counsel in favor of accepting the proposed Settlement Agreements.”
469 F.Supp.2d at 1033.[8] In consideration of the foregoing, we conclude that the trial court did not exceed its discretion in determining that this factor weighed in favor of approving the settlement agreement.

b. Stage of proceedings where settlement achieved

The objectors next maintain that the trial court’s approval of the settlement agreement was inappropriate in that the settlement was achieved both while the case remained in its infancy and without the benefit of “any real discovery.” Per-due’s brief, at 52. More specifically, they contend that the limited number of depositions and written discovery requests coupled with class counsel’s failure to obtain an opposing expert or to depose the PACT board members or their actuary regarding the funding shortfall demonstrates that the case was not in the proper posture for settlement and that the trial court’s contrary conclusion was erroneous.
The trial court, in support of its finding in this regard, noted that, at the time the initial proposed settlement was reached as a result of mediation, the matter had been pending for more than a year. It further found as follows:
“The records and materials filed with the Court disclose that there has been extensive discovery, both formal and informal. These parties, and particularly their counsel, are intimately familiar with the facts, figures, law, risk and complexity of the case. Both sides of this case have had sufficient opportunity to evaluate the strengths and weaknesses of their respective theories and positions .... ”
The objectors argue that “[t]he fact that all discovery has been completed and the case is ready for trial is important, because it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case.” Knight, 469 F.Supp.2d at 1033. Given the wealth of information regarding the financial crisis facing the PACT board, however, this Court declines to hold contrary to the trial court that the parties and their counsel lacked a sufficient understanding of the merits of their respective cases at the time that settlement was achieved. Further, although no expert was obtained to testify on behalf of the plaintiffs, both *396 class counsel and counsel for the objectors cross-examined the PACT chairman and the PACT board’s actuary regarding the proffered financial data. Again, too, the undisputed evidence adduced at the fairness hearing suggests that the delay and expense associated with additional discovery would have further depleted the funds ultimately available for distribution. We are, therefore, unable to conclude that the trial court erred in deciding that the stage at which settlement was achieved did not weigh against approving the terms of the settlement agreement.
c. Range of possible recovery
The objectors contend that the trial court failed to properly compare the terms of the settlement agreement with the likely rewards the class would have received following trial because it did not factor a “level of success for the [class].” According to Perdue, the initiation of the underlying action actually diminished class members’ contractual benefits in that before the action was filed each member was still receiving full benefits. Motlow and Sears further contend that the settlement agreement actually provides little or no relief to class members in light of the legislature’s statutory assurances of full funding.
Contrary to those claims, however, it is undisputed that the PACT program is facing an economic shortfall and that, with or without initiation of the underlying action, and even with the funding added by the 2010 Act, each class member could not expect to continue to receive full payment of benefits indefinitely, nor could a class member anticipate that the trial court would have ordered the PACT board to do something that the undisputed evidence indicates it was clearly incapable of doing, i.e., paying full tuition for all PACT contracts. In support of its finding in this regard, the trial court stated:
“The uncontroverted evidence in this case is that the PACT Trust Fund has a significant actuarial deficit, i.e., its assets are insufficient to pay the projected liability associated with full tuition and mandatory fee payments. The Court therefore believes that the ‘limited fund’ doctrine has application. Ortiz v. Fibre-board Corp., 527 U.S. 815 (1999); Ex parte Holland, 692 So.2d 811 (Ala.1997). Under the limited fund doctrine, the following issues generally must be established: (1) there are multiple claimants against the defendant on the fund; (2) the defendant on the fund has only a limited amount to pay those claims; (3) the limited amount is insufficient to pay all of the claims in full; and (4) all of the claimants are, or can be, brought before the court.
“In this case there are approximately 40,000 outstanding PACT Contracts owned by approximately 30,000 individuals. The evidence is equally clear that the PACT Trust Fund is a limited fund with finite assets. As of May 2011, the Trust Fund had approximately $440 million in assets. It also has an income stream, in future dollars, of $548 million as provided under [the 2010 Act]. Those annual installments are scheduled to begin in 2015. The present value of the total assets, according to the State Treasurer and the PACT actuary, is approximately $830 million. On the other hand, the present value of the obligations owed by the Trust Fund under PACT Contracts well exceeds $1 billion ....
“Given the limited fund doctrine ... it is likely that the only solution at trial would be the same as that accomplished by the proposed Settlement, i.e., to equitably divide the limited funds among the *397 class members. Because there is no alternative source of funding with which to pay benefits, the expectation of any greater recovery would be entirely speculative. Moreover, because the assets of the PACT Trust Fund would continue to be depleted during ongoing litigation, the range of possible recovery available to the class members would actually be less if an equitable division is delayed until trial. Because of the significant risk that a majority of the class members would recover less (or perhaps nothing) if the proposed Settlement is not approved, the Court concludes that this factor weighs in favor of approval.”
(Emphasis added.)
As demonstrated by the foregoing findings of the trial court, it appears both that the proposed resolution of the litigation by settlement is fair and reasonable and that it is at least on par with the anticipated result (and the only result identified as possible) should the matter proceed to a trial on the merits. The settlement agreement is aimed at providing the highest level of benefits possible to all class members. Therefore, we are unable to conclude that the trial court erred in finding that the settlement agreement was reasonable as compared to the range of possible recovery in this action.

d. Opposition to the settlement agreement

The objectors acknowledge that, of the 40,000 outstanding PACT contracts owned by 30,000 participants in the PACT program, there were at most only approximately 70 objectors.[9] Based on those figures, the trial court computed that the objecting class members represented “less than 0.18% of the total contract owners.”
The trial court further explained that the objections received collectively challenged the settlement on the following five grounds (with the third stated ground allegedly being the most common):
“(1) [the trial court’s alleged lack of] jurisdiction; (2) the ripeness or actual existence of a controversy; (3) the failure to enforce PACT Contracts against the State of Alabama; (4) the lack of opt out rights; and (5) excessive attorneys’ fees.”[10]
We note that other challenges regarding the settlement agreement included in the written objections that were expressed during the fairness hearing included the lack of input from the legislature; the allegedly disparate treatment in the settlement agreement of PACT contract holders based on purchase and/or anticipated matriculation dates, i.e., that the proposed settlement was not in the best interest of all class members; that the settlement agreement conflicted with and modified the alleged terms of the original PACT contracts in that the settlement agreement provided for payment of less than full tuition and mandatory fees; concerns regarding the proposed tuition-payment cap and the class members’ liability for any shortfall; that the settlement agreement represented an unconstitutional taking of vested property rights with regard to class members holding paid-in-full contracts; that the settlement agreement left class members in a worse position than they were in as a result of the 2010 Act and the *398 apparent conflict between the settlement agreement and the provisions of the 2010 Act; class members’ dissatisfaction with the provision that any funds remaining with the PACT program after all obligations were met would be transferred to the Education Trust Fund; alleged noticing deficiencies (regarding both the notice of class certification and the notice disclosing the proposed settlement agreement); and the alleged overbreadth of the settlement agreement, in general, and, in particular, with regard to the terms of the included release of liability for PACT board members. Additionally, several class members offered alternative solutions to the proposed settlement agreement.
The fact that less than 70 class members out of 30,000 objected to the settlement agreement weighs in favor of approval of the settlement agreement.[11] When confronted with similar numbers in Adams, this Court made the following observation:
“In reviewing the trial court’s findings and order, we find particularly interesting the fact that less than 1,000 class members, out of 400,000 (less than 1%) objected to the settlement. Courts have affirmed settlements when substantially larger numbers of the class had objected. See, e.g., Huguley v. General Motors Corp., 999 F.2d 142 (6th Cir.1993) (settlement with no opt-out provision approved over objections by 15% of the class); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295 (2d Cir. 1990) (settlement approved over objections of a majority of the class representatives); TBK Partners Ltd. v. Western Union Corp., 675 F.2d 456 (2d Cir.1982) (approving settlement over objections of a majority of the class); Reed v. General Motors Corp., 703 F.2d 170 (5th Cir. 1983) (settlement approved with 600 of 1469 class members objecting).”
676 So.2d at 1273. Although this Court is cognizant of the frustration evidenced in each written objection, the relatively limited number of objections as well as the concerns raised therein do not undermine the trial court’s approval of the settlement agreement against which they were lodged.

e. Payment of class counsel’s fees

Citing the potential for abuse, the objectors also challenge the trial court’s approval of the portion of the settlement agreement awarding class counsel nearly $5 million in attorney fees.[12] The trial court conducted a separate hearing on the appropriateness of the plaintiffs’ motion for fees and costs, and following that hearing it devoted a substantial portion of its final judgment to evaluating this issue. Specifically, the trial court held that the award of attorney fees was justified under the common-fund doctrine because “class counsel ... not only served the common estate but protected and preserved the *399 trust assets, i.e., the ‘common fund.’ ” The trial court also included an evaluation of the reasonableness of the requested fee based on the application of the following guidelines previously set out by this Court in Brown v. State, 565 So.2d 585, 592 (Ala.1990):
“(1) The measure of success achieved.
“(2) The nature and value of the subject-matter of the attorney’s employment, including the novelty and difficulty of the questions presented.
“(3) The learning, skill, and labor requisite to perform the legal service property-
“(4) The time consumed and reasonable expenses incurred by the attorney.
“(5) The professional experience, reputation and ability of the attorney.
“(6) The weight of [the attorney’s] responsibility.
“(7) The fee arrangement between attorney and client, including whether a fee was fixed or contingent.
“(8) The fee customarily charged in the locality for similar legal services and awards in similar cases.
“(9) The time limitations imposed by the client or by the circumstances.
“(10) The likelihood that the attorney’s employment in this case precluded other employment.
“(11) The nature and length of the professional relationship with the client.
“(12) The undesirability of the case.
“(13) Any non-monetary benefits conferred upon the class in this class action.”
Recounting the evidence offered in support of each of the factors identified in Brown, the trial court ultimately concluded that the evidence justified the requested award, which it termed “fair and reasonable,” and that the awarded fee was “significantly lower than a typical fee awarded in such a complex and difficult case.”[13]
In her challenge to the attorney-fee award, Perdue contends that the common-fund doctrine is inapplicable because no common fund was actually created in this case; instead, she asserts, the settlement agreement and the attorney-fee award drain the PACT program’s funds. However, the common-fund doctrine does not apply only if a fund is “created”; instead, the “principle [is] designed to compensate an attorney whose services on behalf of his client operated to create, discover, increase, preserve, or protect a fund to which others may also have a claim.” Henley & Clarke v. Blue Cross-Blue Shield of Alabama, 434 So.2d 274, 276 (Ala.Civ.App.1983) (emphasis added).[14] The trial court held that the settlement in this case serves to preserve the funds in the PACT program; thus, we see no *400 merit in the argument that the common-fund doctrine does not apply in this case.[15]
As to Perdue’s challenge to the amount of the attorney-fee award, we note that an award of an attorney fee under the common-fund doctrine “is within the sound discretion of the trial court, and the ruling on that question will not be reversed on appeal” absent a showing that the trial court exceeded that discretion. Ex parte Horn, 718 So.2d 694, 702 (Ala.1998). Here, the trial court found that the settlement agreement resulted in a benefit to the plaintiffs of approximately $400 million and that the attorney fee awarded was approximately 1.25% of that amount. See supra note 13. Even so, an attorney-fee award “must bear a reasonable relationship to the time expended on the case” and generally cannot be based “solely on an arbitrary percentage of’ the value of property or funds at issue in the proceedings. Carver v. Foster, 928 So.2d 1017, 1027 (Ala.2005). In Carver, we reversed an attorney-fee award and remanded the case for the trial court “to award a reasonable fee commensurate with the time spent, as well as other factors, including the absence of periodic payments, any risk associated with the appropriate discharge of legal responsibilities in the undertaking, and any other applicable factors....” 928 So.2d at 1027. The objectors cite no authority, such as Carver, setting forth the proper standard for this Court to use in analyzing whether the amount of the attorney-fee award in this case was proper. The only attempt on appeal by any of the objectors to challenge the calculation of the attorney fee, other than Perdue’s stating in a conclusory fashion that “no evidence justified it,” is an argument by Per-due that 11 of the 3,600 computerized-research inquiries on the Westlaw database purportedly performed by class counsel do not involve research regarding this case. There is no challenge to the hours purportedly invested in the prosecution of this case by class counsel, no challenge regarding the litigation expenses, and no challenge to the trial court’s resolution of the 13 Brown factors set forth above; further, no alternate method of calculation of the attorney fee is proposed by the objectors.[16] When a party fails to make an argument, or to cite authority supporting an argument, the argument is waived: “ ‘Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment on those issues, for it is neither the Court’s duty nor its function to perform all the legal research for an appellant.’ ” Welch v. Hill, 608 So.2d 727, 728 (Ala.1992) (quoting Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala.1990) (citations omitted)). Given the dearth of argument on this issue, there is no legal basis demonstrating that the trial court exceeded its discretion in approving the amount of the attorney fee.
The objectors argue that the attorney-fee award is evidence that class counsel had a conflict of interest.[17] Specifically, *401 Perdue contends that the “only beneficiaries” to the settlement agreement are the attorneys, who will reap attorney fees while their clients, the PACT contract holders, will receive reduced benefits. However, as noted above, the trial court found that the solution accomplished by the settlement agreement, i.e., the equitable division of the limited funds among the class members, was likely the only solution available in this case: there is no alternative source of funding with which to pay all benefits to all contract holders. With the risk that the majority of the class members would actually recover less than the contract amount, or perhaps nothing, absent the solution proposed by the settlement agreement, we see no merit in the argument that the settlement agreement affords “no” benefit to the class members.
Perdue also contends that class counsel did not hire an expert to challenge or to verify the findings of the PACT board’s actuarial expert. However, Perdue presents no argument as to why this additional expense was necessary in this case: there is no allegation by any party — including the plaintiffs, the objectors, and the PACT board — that the actuarial projections by the PACT board’s expert incorrectly stated the financial peril of the PACT program.[18] Perhaps the hiring of an expert would have evidenced more work on the part of class counsel; there is no argument by the parties, however, that such work was required.
Perdue also contends that a potential conflict of interest arises when class-based relief is negotiated at the same time as class counsel’s fee is negotiated and that such conflict is “plainly evident” in this case. As noted in Knight: “The Court pays attention to the amount of attorneys’ fees awarded to class counsel because ‘the simultaneous negotiation of class relief and attorney’s fees creates a potential for conflict.’” 469 F.Supp.2d at 1036 (quoting Manual for Complex Litigation § 30.42, at 239 (3d ed. 1995)). However, according to the appellees, class counsel’s fee was negotiated only after class-based relief had already been resolved. Furthermore, at the hearing on the attorney-fee award, the deposition of the mediator in this case, retired Associate Justice Bernard Harwood, was entered into evidence “for the limited purposes to show that it was an arm length’s negotiation.” It stated:
“[Counsel:] As part of this negotiated settlement, it included an agreement as to what the attorney’s fees for the class counsel collectively would be, and that was four million nine hundred and fifty thousand dollars. Was that issue as to attorney’s fees also negotiated at an arm’s length good faith manner during the course of this mediation?
“[Mediator:] Very much so.
“[Counsel:] Would it be fair to say that that issue was hotly debated at times?
“[Mediator:] It was hotly debated.”
*402 We see nothing indicating that the trial court exceeded its discretion in failing to find that a conflict of interest affected the attorney-fee award in this case, and no compelling legal argument is put forth demonstrating how any increased scrutiny requires the conclusion that the trial court’s approval of the attorney-fee award was in error.
Finally, Perdue argues that certain post-judgment actions by the PACT board and class counsel evidence a conflict of interest; she specifically notes that class counsel was paid the attorney-fee award while this case was pending on appeal. As explained in Perdue I:
“Following the entry of the trial court’s judgment, the PACT board on August 9, 2011, paid to the clerk of the trial court $4,977,500 in satisfaction of the outstanding judgment for attorney fees, case-related expenses, and amounts awarded to the class representatives pursuant to the terms of the settlement agreement. On that same date, Perdue filed her notice of appeal.
“The next day, class counsel petitioned the trial court for disbursement of the funds on deposit with the clerk of the trial court. That motion specifically referenced Perdue’s pending appeal but stated that Perdue had failed to ‘include a supersedeas bond necessary to stay the above judgment.’ The following day, despite its awareness of Perdue’s pending appeal, the trial court entered an order permitting immediate disbursement of the funds. In that order, the trial court explicitly acknowledged Per-due’s pending appeal but concluded that Perdue’s notice ‘specifically declined any attempt to supersede any of the judgments entered by the Court.’ ”
Perdue I, 127 So.3d at 355-56 (footnote omitted). This Court noted that such disbursement of the attorney fees by the trial court “appearfed] contrary” to the disbursement procedures set forth in the settlement agreement. 127 So.3d at 355 n. 13. Nevertheless, the premature disbursement was an action taken by the trial court, not the parties.
Perdue filed in this Court a motion to stay the execution of judgment. The plaintiffs and the PACT board opposed the motion on the grounds that no such motion had been filed first in the trial court, that no supersedeas bond had been posted, that delay in execution would disrupt the PACT contract-payment scheme embraced in the settlement agreement, and that a stay of the payment of the attorney fees and expenses was moot because the PACT board had already satisfied the judgment.
Perdue characterizes these actions as evidencing a conflict of interest because class counsel “was urging this Court to let them keep their fee.” Perdue’s brief, at 63. Chief Justice Moore, in his dissent, characterizes these actions as the PACT board and class counsel “working] together to authorize immediate payment of the attorney fees in violation of the very settlement agreement they now ask this Court to approve.” 127 So.3d at 411. However, as the above facts demonstrate, the PACT board had no role in the premature disbursement of the funds, and the subsequent joint acts of the PACT board and class counsel were attempts to simply defend their entire judgment on appeal.

f Plaintiffs'monetary relief

The objectors next argue that the trial court erred in approving a settlement agreement pursuant to which the named plaintiffs are the only class members receiving monetary relief. With regard to this aspect of the settlement-agreement approval, the trial court’s order contained the following findings:
*403 “An additional term of the proposed Settlement is the provision for an award of $2,500 to each of the designated class representatives. Such awards are commonplace in class action cases. They are, however, to be carefully scrutinized to ensure that they are reasonable and not done as a tradeoff to relief for the class members as a whole. When such awards are proposed, the Court should look to the actions taken by the class representatives to protect the interests of all class members, whether those actions resulted in a substantial benefit to the class, and the amount of time and effort expended in the litigation.
“Documents which have previously been filed with the Court sufficiently demonstrate that the class representatives have been fully aware of the issues involved. The Court was informed that these class representatives have been deposed, have participated in preparing and responding to other discovery, have participated in negotiations and mediation of this case, and have otherwise contributed in a significant way to the proposed Settlement. The Court also notes that none of the objections filed in this ease have challenged the proposed award to the class representatives. Accordingly, the Court finds that the awards to the class representatives are fair, are consistent with the efforts undertaken by the class representatives, and have no significant impact on the overall relief available to the class members as a whole.”
Thus, although it is true that the class representatives were awarded actual monetary relief under the terms of the settlement agreement, it is also clear that the amount awarded was small and was aimed solely at compensating the representatives for the time and effort they expended on behalf of the class as a whole. The objectors cite nothing disputing the trial court’s findings, as set out above, or otherwise evidencing that the trial court exceeded its discretion in this regard.

g. Disparate treatment of class members

The objectors also contend that the trial court erred in approving a settlement that purportedly treats particular segments of the class differently from other segments based on the anticipated matriculation date of the beneficiary. Specifically, Perdue notes that “beneficiaries matriculating to college earlier will have a higher percentage of their tuition paid.... Those matriculating to college later will receive significantly less from the settlement when reduced to present value, i.e., $35,000 in 2010 dollars will be worth significantly more than $35,000 in 2025 dollars.” Perdue’s brief, at 67. The trial court’s order approving the settlement agreement does not appear to contain a separate finding addressing this particular factor; however, the trial court did specifically conclude that “[t]he proposed settlement ... serve[s] to address the undisputed funding shortfall by establishing parameters for an equitable distribution of the limited assets of the [PACT program], along with the legislative appropriations of [the 2010 Act].” Further, “[i]t is well settled that ‘ “where the trial court does not make specific factual findings, this court will assume that the trial court made such findings as would support its judgment. Poh v. Poh, 64 So.3d 49, 59-60 (Ala.Civ.App.2010) (quoting Herboso v. Herboso, 881 So.2d 454, 456 (Ala.Civ.App. 2003), quoting in turn Berryhill v. Reeves, 705 So.2d 505, 507 (Ala.Civ.App.1997)).
The PACT board notes that, although all class members might not be treated equally in this regard, “the relative benefit of the settlement is distributed equitably among all of the class members,” with *404 those who have been invested longest— and whose beneficiaries are, therefore, presumably closer to matriculation — receiving the most return on their investment “and [more recent investors] receiving less relative return ... [having] longer horizons [in] which to make alternative financial arrangements.” PACT board’s brief, at 72. It further relies on the actuary’s testimony indicating that the “main goal” of the calculations underlying the settlement agreement was aimed at “mak[ing] sure that as many beneficiaries receive as many dollars as possible spread evenly.” Thus, despite the allegedly disparate treatment, the PACT board nonetheless maintains that the settlement agreement satisfies Rule 23. We agree.
Although perhaps not truly equal, the settlement agreement — for all that appears — presents the best possible distribution of the fund’s limited assets among the numerous claimants. As the trial court noted:
“[It] is ... undisputed fact that the limited assets of the PACT Trust Fund will continue to be depleted if the proposed Settlement is not approved. It is the view of the Court that it would be unfair and inequitable to permit full benefits to be paid to certain class members [i.e., those members whose beneficiaries are already matriculating and/or will reach graduation prior to depletion of the fund’s assets,] such that the remaining class members [i.e., those whose beneficiaries have not yet reached matriculation age,] would ultimately receive less than the sums to be provided under the proposed Settlement, and possibly nothing at all.”
Thus, the evidence suggests that the proposed distribution provided for in the settlement agreement is the only means of ensuring that every class member receives at least some return on his or her investment.[19] We are, therefore, unable to conclude that the trial court exceeded its discretion in concluding that this factor, too, weighed in favor of settlement approval.
Given the above, we conclude that the trial court did not exceed its discretion in holding that the settlement agreement met the applicable factors outlined in Adams, supra.
2. Additional Considerations

a. Notice

Motlow and Sears contend that the notice advising class members of the proposed settlement was deficient in numerous respects, including its alleged failure to inform class members of specific settlement terms, such as the compensation due class counsel and the method by which that compensation was calculated and/or negotiated; its failure to specify the 2010 rates at which tuition payments would, under the terms of the settlement agreement, be paid; the insufficient time allegedly allowed by the mailing date to review the settlement and respond before the scheduled hearing date; and the failure of the notice to inform class members of the total value and/or projected benefit of the settlement.
Following its preliminary approval of the settlement agreement, the trial court ordered that approved forms of notice be sent to all class members at the addresses appearing in the records of the PACT program and that notice also be posted on the Web site for the PACT program. The court-approved notice provided, in full, as follows:

*405
“NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

“A proposed class action settlement (‘Settlement’) has been reached in the litigation styled Lisa Nix Green, et al. v. Kay Ivey, et al, Circuit Court of Montgomery County, Alabama, Case No.: CV-2010-900013. The proposed Settlement would change the manner in which tuition and fees are paid by PACT. Among other things, the Settlement would use Fall 2010 rates as the baseline amount to be paid in the future for tuition and fees, regardless of the year that PACT Contract benefits are used. Any tuition and fees charged above that baseline amount would not be paid by PACT, but would be the exclusive responsibility of the PACT Contract purchaser or beneficiary. A complete copy of the proposed Settlement, along with the court’s preliminary approval of the Settlement, can be obtained on the PACT website, www.800alapact.com, or by contacting J. Doyle Fuller for Class A at (334) 270-0020, jdf@fulercopeland. com, or Andrew P. Campbell for Class B at (205) 251-5900, acampbell@lsclaw. com. You are encouraged to review these documents in full.
“The court has scheduled a hearing for June 20, 2011 at 1:00 p.m. to consider whether to grant final approval of the Settlement. If the proposed Settlement receives final approval by the court, you will be bound by the terms thereof. The approval hearing will be held in Courtroom 4A of the Montgomery County Courthouse, located at 100 South Lawrence Street, Montgomery, Alabama. You may appear at the hearing to object to the Settlement. However, in order to be heard at the hearing, you must file a written objection with the court no later than June 10, 2011. Any objections not timely filed shall be deemed waived. For further details, please contact class counsel or see the PACT website under ‘Proposed Class Action Settlement Information’.”
In its final order of approval, the trial court specifically found that “the ... distribution of notice was in compliance with the requirements of the preliminary approval order, the Alabama Rules of Civil Procedure, and due process.”
Rule 23(e), Ala. R. Civ. P., provides that notice of a compromise in class-action litigation “shall be given to all members of the class in such manner as the court directs.” The objectors fail to include authority that establishes a minimum time frame for such notification or that requires that the notice contain the alleged omissions they identify. There is also no authority cited establishing that the designated beneficiaries, who were not included as named class members, were also entitled to notice. Further, they fail to establish that the notice violated Rule 23(e) or notions of due process.
“A class settlement notice need only properly identify the plaintiff class and generally describe the terms of the settlement so as to alert members ‘with adverse viewpoints to investigate and to come forward and be heard.’ Mendoza[ v. Tucson School Dist. No. 1 ], 623 F.2d [1338] at 1352 [(5th Cir.1979) ]. See In re Southern Florida Waste Disposal Antitrust Litigation, 896 F.2d 493, 495 (11th Cir.1990) (per curiam); Bums v. Elrod, 757 F.2d 151, 155 (7th Cir. 1985). The notice is ‘not required to provide a complete source of settlement information.’ In re Gypsum Antitrust Cases, 565 F.2d 1123, 1125 (9th Cir. 1977). See also Greenspun v. Bogan, 492 F.2d 375, 382 (1st Cir.1974).”
Battle v. Liberty Nat’l Life Ins. Co., 770 F.Supp. 1499,1522 (N.D.Ala.1991).
*406 Here, the notice clearly satisfies the requirements in Battle. Not only was the notice, for all that appears, properly distributed to the plaintiff class, but it indisputably informs class members both of the modification in the proposed settlement agreement of their contract benefits and that approval of the proposed settlement agreement will constitute a final adjudication of their claims. Although a copy of the actual settlement agreement was not attached to the notice, the information included was sufficient to place members adverse to the proposed settlement on notice of the need to investigate further the terms of the settlement agreement via the methods identified, and, if they so desired, of how to formally object to final approval. Therefore, we are unconvinced that the trial court, in finding that notice was adequate, exceeded its discretion.

b. Overbreadth

Finally, the objectors challenge the trial court’s approval of the terms of the settlement agreement on the ground of overbreadth. In this regard, they argue both that the settlement agreement improperly provides for relief that was not prayed for in either the initial complaint or the resulting counterclaim and that the release contained in the settlement agreement is overbroad in the present context in that it releases the PACT board members from liability for potential tort claims beyond the scope of the present litigation and for which class members allegedly received no corresponding benefit.
The sole authority this Court can locate in the objectors’ briefs challenging the purportedly overbroad nature of the relief provided, however, is aimed at the infringement of the contract modifications in light of the 2010 Act. The objectors cite nothing actually establishing that a mutually negotiated settlement agreement cannot include relief different than the relief prayed for in the complaint.
Moreover, the objectors fail to adequately allege the value and/or viability of the potential tort claims, which they contend were improperly released, in light of the fact that the PACT board members were sued in their official capacities and thus may be entitled to State immunity. See Burgoon v. Alabama State Dep’t of Human Res., 835 So.2d 131,132-33 (Ala.2002) (a suit for damages against State officials in their official capacities is, in essence, an action against the State itself and cannot proceed). Finally, although the objectors appear to contend that the release excuses the PACT board for any future mismanagement or corresponding breach of fiduciary duty, we note that, as set out in our original opinion in this matter, the release extended only to claims “ ‘which were asserted or which could have been asserted as of the execution of [the] Settlement.’ ” Perdue I, 127 So.3d at 353. Therefore, we see no merit in this contention. Suffice it to say, although the release may be “broad,” the objectors have provided no authority demonstrating that it is so overly broad that the trial court exceeded its discretion in approving it.
After thoroughly reviewing the trial court’s findings of fact and conclusions of law, we cannot hold that the trial court exceeded its discretion in finding that the settlement agreement was fair, adequate, and reasonable.

CONCLUSION

In consideration of the foregoing, the trial court’s July 27, 2011, order approving the settlement agreement and its September 17, 2012, order entered on remand finding the retroactive application of the 2012 Act to be constitutional are affirmed.
*407 1101337 — AFFIRMED.
1101506 — AFFIRMED.
PARKER, J., and WINDOM, PITTMAN, and MOORE, Special Justices,* concur.
SHAW, J., and LYONS, Special Justice,* concur specially.
MOORE, C.J., concurs in part and dissents in part.
STUART, BOLIN, MURDOCK, MAIN, WISE, and BRYAN, JJ., recuse themselves.

. See, e.g., Hamilton v. Scott, 97 So.3d 728, 735 (Ala.2012) (" ‘ “[I]t has long been held that if there is a change in either the statutory or decisional law before final judgment is entered, the appellate court must 'dispose of *383 [the] case according to the law as it exists at the time of final judgment, and not as it existed at the time of the appeal.’ ” ’ ” (quoting Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 438 (Ala.2001), quoting in turn other cases)).

. April 30, 2010, represents the effective date of Act No. 2010-725. The trial court preliminarily approved the proposed settlement agreement on May 5, 2011.

 Retired Associate Justices J. Gorman Houston, Jr., and Champ Lyons, Jr., and Court of Civil Appeals Judges Craig S. Pittman and Terry A. Moore were appointed to serve as Special Justices in regard to these appeals.

. These plaintiffs included Lisa Nix Green; Brent A. Green; Blake Green; Eldridge M. Franklin; Eason L. Franklin; Kimberly H. Franklin, individually and as next friend of John Stephen Franklin; Brian A. McVeigh, individually and as next friend of Sarah K. McVeigh; Allen R. Hudson, individually and as next friend of Emma L. Hathaway; and Nina McGinnis, individually and as next friend of Stevie A. Graves.

. The 2012 Act repealed § 16-33C-19 effective April 12, 2012. Section 4 of the 2012 Act provides: "This repeal ... is retroactive to April 30, 2010.”

. Perdue is the appellant in case no. 1101337; Motlow and Sears are the appellants in case no. 1101506. Although we consolidated the two appeals, separate briefs were filed in each appeal. We sometimes refer to the arguments made in one or the other appeal, as well as to the arguments made collectively by the objectors.

. As required by § 6-6-227, Ala.Code 1975, the attorney general was notified of the present constitutional challenge to the 2012 Act.

. Without citing authority, Motlow and Sears argue that any class certified pursuant to Rule 23(b)(3), Ala. R. Civ. P., is required to have an opt-out provision. See Adams v. Robertson, 676 So.2d 1265, 1270 (Ala.1995) ("[I]n a class action brought under Rule 23(b)(3), the members of the class are entitled to 'opt out’ of the class action and pursue a separate lawsuit.”). Nevertheless, as set out above, the present classes were not certified pursuant to Rule 23(b)(3).

. We address each factor in the order in which they appear in Perdue’s brief.

. In fact, the trial court's order included the following factual findings regarding the complexity of the matter and anticipated expense should the matter proceed to actual litigation:
"Full litigation of this case would be complex, expensive, and time consuming. The case involves rights, obligations, and duties under 40,000 PACT Contracts that will be paid out over a span of two decades. While the Court is informed that enormous amounts of time have been expended on both sides of this case, it is obvious that further litigation of the case will necessitate significantly much more time, effort, and expense. If tried, this case will require extensive and expensive actuarial and financial evidence. Expert testimony on many issues will be necessary. Most importantly, such expenses and delays would continue to erode the limited available funds at the detriment of the class members as a whole.
“The Court is of the view that proceeding to trial in this case, with subsequent appeals, would be not only detrimental to the class members, it in all likelihood would be fatal to the PACT Trust Fund. Based upon the evidence of record, by the time this case could be tried, appealed, and finalized, the PACT Trust Fund would be significantly (and perhaps completely) depleted. If that were to occur, a large percentage of the class members would ultimately receive less than the level of benefits to be provided under the proposed Settlement....”

. The trial court’s final judgment reflects that approximately 55 class members filed timely written objections and that 8 additional objections were received after the established deadline. By this Court’s count, the record includes a total of 69 separate written objections filed by class members; however, some of those filings appear duplicative.

. The trial court’s order then considered and rejected, in turn, the individual merit of these grounds.

. Perdue suggests that the relatively small number of objectors may be attributed to numerous factors, including the purportedly short period for filing and the purported "campaign of misinformation” allegedly undertaken by the PACT board and class counsel in an effort to frighten class members into accepting the proposed settlement agreement. Perdue's brief, at 55. There is, however, nothing before this Court either substantiating those claims or establishing that the purported threat to class members’ benefits was "misinformation.”

. The objectors criticize the fact that the fees actually diminish the funds in the PACT program, which are intended to benefit the PACT contract holders and their beneficiaries. The trial court’s order reflects that the amount of attorney fees provided for in the settlement agreement was "included in the calculations and projections in order to make the proposed settlement viable and workable.”

. The trial court’s order included authority establishing that a customary attorney-fee award in common-fund cases typically ranges from 20% to 25% of the recovery. See, e.g., Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238, 1245 (Ala.1985). The trial court's order further included the following calculation as to the requested fee in the present case:
"According to the actuarial expert testimony and report, this litigation has provided the class members with a benefit of approximately $400 million (present value) over what they would have received had refunds been given or if the PACT Trust Fund had been allowed to hit zero. The fee request in this case is roughly 1.25% of that amount.”

. The Chief Justice, in his dissent, also points out that no "common fund” was created in this case. However, as Henley & Clarke holds, the common-fund doctrine also applies when a fund is preserved or protected. As the undisputed evidence in this case indicated, see supra note 13, the settlement agreement provided $400 million in benefits to the plaintiffs.

. Other than stating that the award is "exorbitant,” Sears and Motlow present no argument that it is excessive.

. The Chief Justice, in his dissent, undertakes to examine the "time and labor” performed by class counsel in discovery and the expenses class counsel incurred. However, no such challenge is found in Perdue’s brief. " ‘[T]his Court is not under a duty to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal.' ” Braman & Guy, P.C. v. City of Montgomery, 828 So.2d 914, 920 (Ala.2002) (quoting Totten v. Lighting & Supply, Inc., 507 So.2d 502, 503 (Ala. 1987)).

.Motlow and Sears note that the settlement agreement contains a "clear sailing agreement.” Such an agreement "is one where the party paying the [attorney] fee agrees not to *401 contest the amount to be awarded ... so long as the [attorney-fee] award falls beneath a negotiated ceiling.” Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 520 n. 1 (1st Cir.1991). They contend that such agreements are suspect and require greater scrutiny. Motlow and Sears’s brief, however, contains no discussion as to how that agreement impacted this case.

. Class counsel testified at the hearing on the attorney fees that he believed it was unnecessary to hire an expert to test the projections of the PACT board’s expert because it was obvious that the funds in the PACT program were insufficient. Furthermore, class counsel argued that the legislature had asked the Retirement Systems of Alabama in 2009 to investigate the financial health of the PACT program, and a resulting actuarial study confirmed that the program was underfunded.

. We note, too, that should investment returns exceed anticipations, those excess funds, too, will be included in future distributions to class members. Moreover, each class member retains the right to seek a return of his or her original investment.